## ROSE K. KARGUTH, Appellant, v. DONK BROTH-ERS COAL & COKE COMPANY.

### Division Two, July 14, 1923.

1. **PRESUMPTIONS: Substantial Evidence: Demurrer.** Substantial evidence that the driver of the coal wagon was the servant of and hauled the coal for defendant; that the coal was ordered from defendant by the purchaser; that the driver of the wagon was directed by defendant to haul it to the purchaser and did so, amounts to more than a mere presumption that the driver was defendant's servant and in defendant's employ at the time he threw a shovelful upon plaintiff as she passed along the sidewalk where he was unloading the coal; and, being substantial, the question was properly submitted to the jury, and the trial court erred in assuming to rule that such evidence amounted to only a presumption and was overcome by other testimony that the driver was at the time a general servant and in the employ of another, and in granting a new trial on that theory.

2. ———: **General Servant: Lent to Another.** The fact that an employee is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may become liable for his negligent acts. When one employer lends his general servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the employer to whom he is lent, and the borrower is liable for a personal injury of a third person negligently inflicted by the servant in the performance of the work delegated to his hands.

Appeal from St. Louis City Circuit Court.—*Hon. Charles W. Rutledge,* Judge.

REVERSED AND REMANDED (*with directions*).

*Joseph T. Strubinger* and *Percy Werner* for appellant.

(1) The trial court rightly overruled defendant's demurrer to the evidence at the close of all the evidence

in the case and rightly allowed the case to go to the jury.
It did not conclusively appear that the driver in the
commission of the negligent act was not subject to the
control of defendant.  The entire evidence supported a
reasonable inference that the driver, in executing the
request that the customer Baublitz made of the defend-
ant Donk Brothers that the coal which he purchased
should be placed in his cellar, was acting for, and was,
in the performance of that work, subject to the control of
Donk Brothers.  Waters v. Fuel Co., 52 Minn. 474, 38
Am. St. 564; French v. Boston Coal Co., 81 N. E. 265;
Cain v. Hugh Nawn Contracting Co., 202 Mass. 237;
O'Neill v Blase, 94 Mo. App. 648; Brackett v. Lubke, 4
Allen, 138, 81 Am. Dec. 694; Simmons v. Murray, 209 Mo.
App. 248; Thompson v. Portland Hotel Co., 209 Mo. App.
476; Grothmann v. Hermann, 241 S. W. 461.  (2) Plain-
tiff's case rested on the reasonable inference of the right
of control in defendant over the particular work in ques-
tion which the jury was entitled to draw from the direct
evidence in the case, to-wit, that, except as to the prefer-
ence shown their regular drivers in sending them out
first, all the drivers engaged in the delivery of defend-
ant's coal to its customers, whether regular drivers or
casual drivers, were treated alike; that special direc-
tions as to the mode of delivering coal to meet the
wishes of its customers were received at the general
office of the defendant and transmitted from the general
office to the branch offices; that defendant had regular
dealings with its customer, Baublitz, who indicated a
special mode of delivery, and defendant had on prior
occasions sent out a chute with the coal to enable the
driver to place the coal in the cellar; and that it had
the right to control him as to when, where and how he
should accomplish the depositing of the coal on its cus-
tomer's premises.  "The inference which should be
drawn from the evidence as to the relations of the driver,
the owner of the team, and the defendant were not mat-
ters of law, but questions of fact to be decided by the
jury under suitable instructions."  Cain v. Hugh Nawn

Contracting Co., 202 Mass. 237; Finnegan v. Railway, 244 Mo. 608, 653. (3) A presumption is a rule of law, whereas an inference is merely a permissible conclusion based upon facts which have been proved or as to the existence of which there is evidence. The learned Circuit Judge lost sight of this distinction. (4) Defendant made no attempt to show that, by virtue of a contract between them, Cora Maas retained the right of control over the driver as to all his acts performed while in defendant's service. A prima-facie case having been made out, the burden shifted to the defendant to show that it had not the right of control over the driver Dandridge in the execution of the particular work he had in hand, to-wit, the putting of the coal into its customer's cellar. It was in a better position than plaintiff to know what the contract was. Perry v. Ford, 17 Mo. App. 212; Knoche v. Pratt, 194 Mo. App. 300; Dillon v. Hunt, 82 Mo. 150; Holloway v. Schield, 243 S. W. 163. (5) The circumstances and occupation of Cora Maas tend to negative the conclusion that she was an independent contractor, as to the work in question. Wallace v. Southern Cotton Oil Co., 91 Tex. 781. (6) The defendant, having by an instruction asked the judgment of the jury upon the question whether the evidence was such as to justify the drawing of a reasonable inference that the defendant, if present at the time and place of the accident, had authority to direct the driver of the wagon where and as to the manner in which the coal should be thrown from the wagon, is precluded from contending that it was error to give the instruction, or that there was no evidence to which it was applicable. Gayle v. Missouri Car & Foundry Co., 177 Mo. 427; Murphy v. Mack, 239 S. W. 595, 596; Hudson v. Hall, 239 S. W. 152; Hayes v. Bunch, 91 Mo. App. 472; Berkson v. K. C. Cable Ry. Co., 144 Mo. 211, 219; Flori v. Dolph, 192 S. W. 950. (7) The trial court, in setting aside the verdict of the jury on the authority of Guthrie v. Holmes, and on the ground that plaintiff's prima-facie case had been completely overcome by the defendant's testimony, fell into the error of supposing that

plaintiff's prima-facie case rested upon a mere presumption arising out of the fact that the wagon carried the sign of Donk Brothers Coal & Coke Company, the defendant. It overlooked, too, the fact that in Guthrie v. Holmes, the chauffeur had been given specific directions, and that the vehicle was a pleasure and not a commercial vehicle. As a matter of fact, plaintiff's case rested on the direct evidence of the relations to each other of Donk Brothers Coal & Coke Company; Baublitz, their customer; Dandridge, the driver, and the circumstances and conditions under which the particular work in question was being done at the time plaintiff was injured, and the reasonable inferences to be drawn therefrom. Vaughan v. Davis & Sons, 221 S. W. 782; Gorry v. Boehmer Coal Co., 241 S. W. 977; Mann v. Stewart Sand Co., 243 S. W. 406. (8) The act of throwing coal directly from a wagon across a public sidewalk, in use by pedestrians, constituted negligence. Alexander v. Star Chronicle Pub. Co., 197 Mo. App. 601. (9) In deciding whether it was proper for the court in the first instance to have submitted to a jury the issue as to whose work the driver was doing in getting the coal from the wagon bed through the cellar door into the basement, the evidence of the plaintiff must not only be taken as true, but it must be viewed in the light most favorable to plaintiff, and must be taken to admit as true not only every fact shown, but every inference that might reasonably be deduced therefrom. Hall v. Coal & Coke Co., 260 Mo. 351-365: Whiteaker v. Ry. Co., 252 Mo. 438, 452.

*Jourdan, Rassieur & Pierce* for respondent.

(1) Plaintiff's case is founded on the theory that a servant of the defendant in the scope of his employment caused the injury. The burden is, therefore, on plaintiff to establish both the agency and employment. 1 Labatt's Master & Servant (2 Ed.) sec. 16, p. 54; Hays v. Hogan, 273 Mo. 1; Guthrie v. Holmes, 272 Mo. 233; Killroy v. Crane Agency, 203 Mo. App. 310; Michael v. Pulliam, 215

S. W. 763; Mayes v. Fields, 217 S. W. 589. (2) Where the servant who causes the injury is in the general employment of another than defendant, the presumption arises that such servant was acting for his general master, and this presumption may be overcome only by evidence showing actual control on the part of the defendant or the right by the defendant to control such servant. Orders to such servant by defendant as to where to get and where to deliver goods of defendant is not evidence of such control. 1 Shear & Red. on Neg. sec. 158, note 1; Guthrie v. Holmes, 272 Mo. 215, 233; Killroy v. Crane Agency, 203 Mo. App. 310; O'Hara v. Laclede Gas Light Co., 131 Mo. App. 428; O'Hara v. Laclede Gas Light Co., 244 Mo. 395; Flori v. Dolph, 192 S. W. 950. (3) Plaintiff was injured by coal thrown from a wagon. It is admitted by plaintiff that the wagon from which the coal was thrown was not owned by defendant, but by a third party. The only evidence as to control over the driver in charge of the wagon was that he was employed by a third party who carried liability insurance to protect against damage from his acts; that the defendant had no right to control him and that defendant exercised none. The presumption under such facts was that the servant was controlled by his general employer and plaintiff failed to make a case for the jury in not showing otherwise. Sluder v. Transit Co., 189 Mo. 107, 140; Guthrie v. Holmes, 272 Mo. 215, 233; 1 Shear & Red. on Neg. sec. 158, note 1; O'Hara v. Laclede Gas Light Co., 131 Mo. App. 428; O'Hara v. Laclede Gas Light Co., 244 Mo. 409; Singer v. McDermott, 62 N. Y. Supp. 1086; Glassman v. Harry, 182 Mo. App. 304; Philadelphia & R. Coal & Iron Co. v. Barrie, 179 Fed. 50; Neuschaefer v. Colonial Co., 180 N. Y. Supp. 413; Ash v. Century Lbr. Co., 133 N. W. (Iowa) 888; Stewart v. Calif. Improvement Co., 63 Pac. 177; Frerker v. Nicholson, 92 Pac. (Colo.) 224; Nicholson v. McGovern Undertaking Co., 92 Pac. (Colo.) 225; Fisher v. Levy Circulating Co., 182 Ill. App. 393; Johnson Chair Co. v. Agresto, 73 Ill. App. 384; Schmedes v. Deffaa, 138 N. Y. Supp. 931; Vasligato v.

Yellow Pine Co., 143 N. Y. Supp. 817; Hanatsek v. Wilson, 146 N. Y. Supp. 1016; Cattini v. American Ry. Express Co., 196 N. Y. Supp. 10; Grastataro v. Brodie, 179 N. Y. Supp. 324; Miranker v. Williams, 158 N. Y. Supp. 273. (4) The plaintiff offered no evidence to show ownership of the wagon or control over the driver causing the injury, and while it is true that, in considering a demurrer, the plaintiff is entitled to reasonable inferences, the jury should not be allowed to guess as to the facts. McGee v. Railroad, 214 Mo. 543; McCreery v. United Railways Co., 221 Mo. 31. (5) Although the court gave reasons for awarding the new trial, if there were any other errors to justify setting aside the verdict the court's action should be affirmed. Craton v. Huntzinger, 187 S. W. 48. (6) Where the question of liability for the acts of a driver turns upon the question as to the ownership and control of the wagon and driver, an insurance policy insuring against loss "by reason of the ownership, maintenance and use of such vehicle, including carrying of goods thereon, the loading and unloading thereof" is admissible to show both ownership and control of the wagon and driver in the unloading thereof, and it was error for the court by instruction to limit the use of the policy to the showing of ownership only. Betts v. Magoon, 85 Mo. 580, 587; Boten v. Ice Co., 180 Mo. App. 96, 110; Vaughan v. Davis & Sons, 221 S. W. 782, 786. (7) The damages awarded by the jury are so excessive as to indicate bias and prejudice. Jones v. Railway Co., 228 S. W. 780.

RAILEY, C.—On January 20, 1921, plaintiff filed in the Circuit Court of the City of St. Louis, Missouri, an action against the above named defendant, and in her petition alleged that she was a citizen and resident of the city aforesaid; that said defendant is a Missouri corporation, engaged in the business of selling and delivering coal to customers residing in said city of St. Louis; that on or about November 20, 1920, while she was walking eastwardy on the south sidewalk along Eas-

ton Avenue, one of the public streets of said city, and in the usual place for pedestrians, and when she had reached a point about opposite the premises known as 4762 Easton Avenue, a servant of the defendant engaged in delivering coal at said premises, in attempting to throw coal from a wagon, in which it had been transported, across the sidewalk and into a cellar opening, negligently hurled a shovel full of coal, suddenly and violently onto and against her, knocking her down and inflicting serious and painful injuries, which are. set out with particularity in said petition. The latter also specifies certain expenses incurred, and the damages claimed, to the extent of $15,000.

The defendant, in its amended answer, on which the case was tried, denied the truth of every allegation contained in said petition. It further charges that plaintiff walked between the coal wagon, which was there being unloaded, and the coal hole, into which the coal from said wagon was being thrown, when she saw, or by the exercise of ordinary care, could have seen, that the driver of said wagon was then unloading, and in the act of throwing, a shovel full of coal from said wagon, into said coal hole, and walked into a position of danger between said wagon and said hole, without making any effort to ascertain whether coal was being thrown from said wagon, and without giving the driver of said wagon any notice of her intention to pass between said wagon and coal hole, when she saw, or by the exercise of ordinary care, could have seen, that said driver was about to throw a shovel full of coal from said wagon into said coal hole. It is charged that the above acts of negligence on the part of plaintiff directly contributed to cause whatever injuries, if any, were sustained by her on said occasion.

The reply denied the new matter pleaded in said answer.

The case was tried before a jury, and the latter returned a verdict in favor of plaintiff for $8,000. Defendant, in due time, filed its motion for a new trial.

In considering same, the trial court reached the conclusion that plaintiff failed to furnish sufficient evidence to show that the coal driver, who injured plaintiff, was in the service of defendant, or that he was defendant's agent, at the time plaintiff was injured. The court thereupon sustained defendant's motion for a new trial as to the sixth ground thereof, which reads as follows:

"6.   The court erred in overruling the instruction in the nature of a demurrer to the evidence offered and requested by the defendant at the close of all the evidence."

The plaintiff appealed from the order granting defendant a new trial and, hence, it will be necessary, in passing upon the case, to fully consider the testimony presented in the record.

H. C. Baublitz, a witness for plaintiff, testified that he was a lace curtain cleaner, and his place of business was at 4762 Easton Avenue; that he had lived in the city of St. Louis since 1914; that on November 20, 1920, he ordered some coal delivered at his premises from Donk Brothers, who had been supplying him with coal for about three or four months; that fifty bushels lasted him about three weeks; that he ordered the coal on the above date over the telephone, and at the time it was ordered told them it was to be put in the basement; that he called up the office of Donk Brothers Coal Company, and was referred to the city agent; that the coal was delivered in a day or two after said order, to-wit, on November 20, 1920, at about ten o'clock in the morning; that he was there when the coal was delivered, and saw the driver and wagon; that the driver brought a delivery slip into the business place of witness, and the latter read it. It had the name "Donk Brothers Coal & Coke Company" printed on it. There was a small sign at the front of the wagon, attached to the latter, which said "Donk Brothers." This witness further testified: "I bought this coal from Donk Brothers Coal and Coke Company and paid Donk Brothers Coal & Coke Com-

pany for it, and had no dealings with anybody else but Donk Brothers Coal & Coke Company in connection with the delivery of that coal on my premises. My basement is reached from the sidewalk. There is an opening in the sidewalk for the reception of coal, a dividing steeldoor.'' He said it was about eleven feet from the building line to the curb, with a concrete walk between, about eight feet wide. On cross-examination witness testified, that he ordered the coal from Donk Brothers Coal & Coke Company. He further testified: ''When the driver came there with the coal, I showed him where the cellar door was, and told him to shovel the coal into the cellar.''

On re-examination said witness further testified: ''I told him where it went in. I pointed to the opening, and he opened it himself. The coal had been delivered there at other times. Some used a chute to put it in and some didn't. I had nothing to do with how he put it in.''

Mrs. E. Casper, in behalf of plaintiff, testified, in substance, that she lived at 4764 Easton Avenue, near the scene of accident; that she was employed by H. C. Baublitz, and was at his place where the coal was delivered on November 20, 1920; that she saw the coal delivered at that time, and saw the wagon from which it was delivered; that she saw the delivery slip the driver brought in, asking for a receipt; that she saw it and Baublitz's name; that ''Donk Brothers'' was printed on the slip; that she receipted for the coal and handed the slip back to the driver; that she saw the plaintiff, Mrs. Karguth; that she was in there when witness signed the slip; that she remained there some time and seemed hurt; that Donk Brothers Coal & Coke Company had delivered coal at this place of business prior to that time; that she had seen them deliver coal there a number of times. On cross-examination, she testified: ''The ticket I seen was a weight ticket, showing the amount of coal on the load, and showed a certain amount of coal was delivered at the place.''

George J. McCarthy testified, in substance, that he saw the coal delivered, and saw the plaintiff get hit with

a shovel full of coal, as she was walking in front of the
coal wagon; that the coal hit her in the side, made her
run about ten feet and then she fell down; that the driver
was on the wagon in the bed of the same, and threw a
shovel full of coal, as plaintiff was passing on the grani-
toid walk, which struck her; that she came from the west
and was going east; that he saw the slip the driver had
for the receipt of the coal; that it had on it the name of
''Donk Brothers Coal & Coke Company.'' On cross-ex-
amination, witness testified that he had seen the driver
shoveling coal into that hole for some time before plain-
tiff was hit; that the driver had to turn around, stoop
down and get another shovel full, after he had emptied
his shovel; that it would take him a minute or two to do
this; that the slip brought in was the weight ticket. On
re-direct examination, witness testified that the driver
threw some of the coal on the sidewalk; that ''just before
the plaintiff was hurt, he was throwing it all the way into
the coal door from the wagon and it was while doing that
that the plaintiff was hurt.''

Mrs. Rose K. Karguth, the plaintiff, testified in her
own behalf, in substance, that she was a widow, earning
$75 per month, clerking in a confectionery establish-
ment, and acting as housekeeper for her foster parents
when injured by the coal driver; that she was hurt in
front of the Baublitz establishment, about 10'oclock in
the morning. She further testified: ''As I approached
that place I noticed a wagon there, and the driver in the
bed of the wagon throwing coal in a coal cellar. I waited
until he threw the second shovel full and I know that he
saw me, and I went to go past, and I just passed the coal
chute when the coal hit me on the back, throwing me
heavily on my side against the building. It hurt both
my ankles and bruised me all over the right side and I
was internally injured.''

After testifying as to her injuries and suffering, she
was cross-examined, and testified as follows: That she
was going east, saw the coal wagon back up, and the coal
being shoveled into the coal hole in the sidewalk; that

she saw the wagon from the time she reached the corner west of it, down to where she was struck; that she stopped while the driver was throwing two shovel fulls in the hole; that the driver saw her, and that she walked on, and he threw a shovel full of coal and struck her; that the driver saw her waiting to get by; that she saw him looking at her; that as the driver threw the second shovel full of coal in the hole, she started to walk between the wagon and the hole; that she did not say anything to him before she started to cross, but she knew he saw her, because he looked at her. On re-cross-examination, plaintiff testified, that the sign which she saw on the coal wagon was a little tin sign; that she could tell what position the coal driver occupied as she was passing; that she could tell exactly when he threw the shovel of coal, and saw him in the act of throwing it; that he was facing east, stooped to pick up the coal from the wagon and would swing south; that she said nothing to him about passing.

Doctors O. C. Raines and James J. Hogan testified as to the extent of plaintiff's injuries, etc., but on the issues before the court it is not necessary to set out same, at this time.

Plaintiff then rested, a demurrer to the evidence was interposed by defendant, and overruled by the court.

Thereupon defendant introduced the following testimony:

Cora Maas testified that she was engaged in the coal and hauling business, at 2009 North Market Street; that she had one two-horse wagon and two single wagons; that she and her brother-in-law took orders for themselves, and got coal from Donk Brothers to fill the orders; that when they did not have enough orders of their own, they did hauling for Donk Brothers; that she owned the wagon in question; that her brother-in-law worked for her, and employed the drivers; that she had the wagon insured. Over the objection of appellant, the court admitted in evidence the policy of insurance on said wagon, solely for the purpose of showing that she was the

owner of same. Witness further testified that the name "Cora Maas" was on the wagon; that she paid the driver a part and her brother-in-law paid him a part of what was due him; that he was paid the way he worked; that if he worked a day, or half day, he was paid accordingly with her money; that the sign attached to said wagon read "Coal.—Donk Brothers." She further testified in chief:

"Q. You bought coal from time to time from Donk Brothers, and delivered it to your own customers? A. Yes, sir.

"Q. When the wagon wasn't busy, you sent it down to do hauling for Donk Brothers? A. Yes, sir."

On cross-examination witness testified that the driver of the wagon in question was in the court room during the trial; that she never had any contract with Donk Brothers; that she did not know what the driver of her wagon did, nor what he was told to do, or anything of that kind. On re-examination, she said she had done hauling for Donk Brothers before the accident.

Harry L. McGinnis, brother-in-law of Miss Maas, testified that in November, 1920, he was in charge of the business for Miss Maas; that he hired and fired the drivers; that he knew Tom Dandridge, and had him driving for a while, a couple of weeks; that Tom Dandridge was driving the coal wagon the day of the accident; that he (witness) hired him, and paid him through Miss Maas; that he was not working for Miss Maas at the time of the trial; that they were running an ice, coal and general hauling business; that they would take orders and deliver the goods; that at times they would make deliveries for Donk Brothers; that he bought coal on his own account from Donk Brothers and sold it; that the only instruction given Dandridge was to go to the yards, and if Donk Brothers gave him any hauling, to do it; that he (witness) owned said wagon at the time of the trial; that on the day of the injury, on the front end, were the words, "Cora Mass;" that close to the back end was Donk Brothers' sign, which

had been on the wagon for six or eight months. On cross-examination, witness said he returned to the city on the morning of November 20, 1920, after having been away about two weeks; that when he got back that morning, Dandridge had already gone to Donk Brothers, so that he did not see him until after the accident, and had not seen him for two weeks.

William H. Marsh testified that he was manager for Donk Brothers' depot at 3746 Market Street, St. Louis, Missouri; that he knew Cora Maas and Mr. McGinnis; that they were in the coal and hauling business; that, "It just happened that Miss Maas bought coal from us, and occasionally we gave them a load to haul."

He further testified:

"Q. When Miss Maas's wagon hauled for you, what directions, if any, did you give to the driver? A. Well, the only directions I gave the driver was what kind of coal to load, the amount to load, weigh them out and put the address on the ticket where he was going to."

He further testified that about November 20, 1920, he was selling coal to Cora Maas; that his books show, on November 20, 1920, a load of coal was sent to H. Baublitz, 4763 Easton Avenue; that it was hauled by Dandridge for Cora Maas; that Dandridge was not in the employ of Donk Brothers Coal & Coke Company; that the driver of the wagon was given the amount of coal to load, the kind of coal to be delivered, the weight of same, a weight ticket and the address where the coal was to be delivered; that the above were the only directions the driver got.

On cross-examination, witness testified, that defendant operated about thirteen yards in different parts of the city and East St. Louis, and coal was delivered to them in carload lots; that defendant operated eighteen teams of their own; that the wagon used by the driver in question did not belong to defendant, but to Cora Maas, although it had defendant's sign thereon; that he did not have to call Dandridge, but the latter came to defendant's office to see if they had work for him; that

Dandridge reported there nearly every morning about seven o'clock that "he would just drive the wagon in the yard and wait until I had something for him to do. Then when I got something for him, I would tell him what kind of coal to load, and we have a yardman there to tell him where to load. He loads his own wagon. The coal belongs to Donk Brothers Coal & Coke Company, and it is bought by a customer of Donk Brothers for delivery at his residence or place of busines, as it may be. When a customer orders coal, it is customary for them to tell where they want it put, whether in the back yard or in the basement. They tell the driver that when he gets there. They do not telephone the company's office."

He further testified that he had no recollection of saying anything to Dandridge when he left with the load of coal; that Dandridge never worked for witness, nor did he ever pay him any money; that he (witness) had nothing to do with the hiring of drivers; that when the defendant's drivers came in they were given the preference; that drivers of all teams were treated alike; that defendant has a regular scale ticket, with defendant's name thereon, which is given to the drivers; that the driver gets the ticket signed by the customer, and brings it back; that he did not recollect whether Dandridge collected cash for his the same as other drivers, but naturally he would do that.

Gus A. Niggeman, over the objection of plaintiff, was permitted to show, as head-bookkeeper, that Cora Maas purchased from defendant, during November, 1920, coal of the value of $311.07; that she was credited for hauling with $22.44 at various rates; that in November, 1920, she hauled six loads; that for five of said loads she was credited with $1.25 per ton and $0.90 for the other load.

The foregoing covers very fully all the evidence offered at the trial. At the conclusion of the whole case defendant's demurrer to the evidence was overruled. The trial court sustained defendant's motion for a new trial,

299 Mo.—38.

as heretofore stated, and plaintiff appealed from the order granting said new trial.

Such other matters as may be deemed important will be considered in the opinion.

I.   Appellant assigns as error the action of the trial court in sustaining respondent's motion for a new trial on the ground that defendant's demurrer to the evidence should have been sustained at the conclusion of the testi-

**Presumption:**
**Substantial**
**Evidence.**
mony. The appeal herein was taken from the order granting respondent a new trial. The evidence has been fully and accurately set out in the preceding statement, and need not be referred to again, except by way of convenience, and as illustrative of the point under consideration.

The trial judge filed a memorandum opinion, which is found in the record, and states therein the. following reasons for sustaining the motion for a new trial, to-wit:

"Under the authority of the latest decision of the Supreme Court, which is controlling on this court, i. e., Guthrie v. Holmes, 272 Mo. 215, the presumption of liability of defendant, and the prima-facie case, 'takes flight upon the appearance in evidence of the facts themselves' overcoming same. This decision holds that this court, as a matter of law, where the presumption of liability is overcome by direct evidence showing non-liability, must instruct the jury that the defendant is not liable. Apparently, in such case, the question as to whether the facts showing non-liability · are true, where no evidence is offered to the contrary other than that justifying the presumption, cannot be submitted to the jury. The above case holds that it is then a matter of law for the court, and not still a matter of fact for the jury. I am obliged to follow this. decision."

In other words, the trial court, as shown by said memorandum, was of the opinion that plaintiff, in attempting to prove the driver of the coal wagon was the *servant of defendant,* relied on the *legal presumption* that the facts shown in her behalf constituted such driver

defendant's servant in the delivery of the coal in question. The conclusion was then drawn by the trial court, in passing on the motion for a new trial, that, as defendant offered direct testimony showing that Cora Maas was the owner of said wagon, and the driver thereof had been hired and paid as her general servant, the legal presumption aforesaid "took flight," and left the plaintiff without any legal evidence to sustain a recovery.

Reverting to the facts disclosed by the record, we find that plaintiff was lawfully on a public highway when injured; that she produced substantial evidence before the jury tending to show that she was in the exercise of due care, and was negligently assaulted by the driver of the coal wagon in question, with a shovel full of coal and that she suffered severe injuries therefrom. Taking the foregoing as a major premise, what does the testimony disclose as to whether said driver at the time and place of accident was the temporary servant of defendant in unloading said coal? In order to simplify this inquiry, for the sake of the argument, let it be conceded that Cora Maas was the owner of the wagon in question, that Dandridge, the driver of same, had been hired by her as a general servant and, as such, undertook to haul the coal in controversy. Notwithstanding the foregoing facts, did the plaintiff produce substantial evidence before the jury tending to show that Dandridge, in addition to being the general servant of Cora Maas, was, with her consent, permitted to act as a special servant of defendant for hire in delivering the coal aforesaid? H. C. Baublitz testified that he ordered the coal in controversy from defendant, over the telephone, and told defendant's employees it was to be put in his basement; that the driver brought with the coal a weight slip with defendant's name printed on it; that a small sign was on the front of said wagon with the words "Donk Brothers" thereon; that when the driver came with the coal, Baublitz told him to shovel it into the cellar, and had nothing to do with putting it in; that Mrs. Casper, an employee of Baublitz, receipted for the coal and handed the slip back

to the driver. Cora Maas testified in chief that Dandridge was paid by the way he worked. If he worked a day or a half day, he got paid that way. She further testified:

"Q. You bought coal from time to time from Donk Brothers, and delivered it to your own customers? A. Yes, sir.

"Q. When the wagon wasn't busy, you sent it down to do hauling for Donk Brothers? A. Yes, sir."

She further testified that she had no contract with defendant; that she did not know what the driver did, nor what he was told to do, or anything of that kind. She knew nothing about the hauling in controversy.

The brother-in-law of Cora Maas testified that he hired Dandridge, and he was paid through Cora Maas. This witness had been gone from St. Louis for two weeks before the accident and did not see Dandridge until after plaintiff was hurt. He said, at times, they would make deliveries for Donk Brothers; that he would tell the driver to go to defendant's yard, and if they gave him any hauling, to do it.

Both Cora Maas, and her brother-in-law, testified that Dandridge, the driver, was authorized to haul the above coal for defendant. The evidence is undisputed that they were not present when this hauling was done, did not know it was being done at the time, gave no instructions to the driver, and left the latter entirely free to contract with defendant for the hauling of the coal as any other teamster might have done. On the other hand, Wm. H. Marsh, the manager of defendant, testified that Dandridge reported at defendant's yard nearly every morning at about seven o'clock to know if defendant had hauling to do; that the books of defendant showed that coal was to be delivered to Baublitz at 4763 Easton Avenue on November 20, 1920; that he employed Dandridge to haul said coal; that Dandridge was to load the coal himself; that he told the driver what kind of coal to get, and to have it weighed; that he should take the weight slip, with defendant's name printed thereon, and

deliver the coal to Baublitz at the above number; that the driver would expect the purchaser to show him where the coal was to be unloaded; that the driver was expected to have the slip or receipt signed and returned to defendant, as was done in this case.

It is clearly manifest from the foregoing that plaintiff was not relying alone on presumptions, but produced clear and direct substantial testimony tending to show that Dandridge was authorized to take the job of hauling said coal, and that no other person, aside from defendant's employee, assumed to control Dandridge, or to direct and control his movements.

In view of the foregoing we hold that there was abundant substantial evidence in the case which warranted the jury in finding the issues for plaintiff; and especially, finding that the driver of the coal wagon was in the service of defendant, and acting within the scope of his employment when he inflicted on plaintiff the injuries complained of herein. The record in this case presented mixed questions of law and fact, which it was the peculiar province of the jury to solve, under the guidance of the court. The above conclusion reached by us is founded upon substantial testimony, and is in full accord with both reason and authority as hereafter shown. [Holloway v. Schield, 243 S. W. (Mo.) 163 and following; Fitzgerald v. Cardwell, 226 S. W. (Mo. App.) 971; Vaughn v. Davis & Sons, 221 S. W. l. c. 784-5; Winkleblack v. Mfg. Co., 187 S. W. l. c. 97; 18 R. C. L. sec. 244, p. 784; 26 Cyc. 970, 971; 1 Labatt on Master & Servant (2 Ed.) sec. 18, pp. 56, 60; Wharton on Agency, sec. 468, p. 303; Reinhard on Agency, sec. 474, p. 552; Tiffany on Agency (Hornbook Series) sec. 63, p. 269; 1 Clark & Skyles on Agency, sec. 16, p. 32; Puhlman v. Excelsior Cab Co., 259 Pa. St. 393; Janik v. Ford Motor Co., 180 Mich. 557, 147 N. W. 510; Wood v. Cobb, 95 Mass. 58; Brown v. Smith & Kelley, 86 Ga. 274; Jimmo v. Frick, 255 Pa. St. 353, 99 Atl. 1006; Pease v. Gardner, 113 Me. 264, l. c. 267-8, 93 Atl. 550.]

The law relating to this subject is clearly and suc-

cinctly stated in 18 Ruling Case Law, sec. 244, page 784, as follows:

"The fact that an employee is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may become liable for his acts. And it is true as a general proposition that when one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him."

The principle of law declared in above quotation from Ruling Case Law was followed by the other Division in the recent case of Holloway v. Schield, 243 S. W. 163, and following, where numerous authorities on this subject are fully considered and reviewed. The other authorities cited, supra, sustain the above quotation.

It follows from the foregoing, that the trial court committed error in setting aside the verdict, etc., and granting defendant a new trial, on the ground that a demurrer to the evidence should have been sustained.

II. Upon a careful examination of the record we find that no error was committed during the progress of the trial before the jury, of which defendant can legally complain. The case was submitted to the jury No Error at Trial. on liberal instructions given in behalf of respondent, while those given in behalf of plaintiff properly declared the law. The verdict of the jury as to the damages sustained was not excessive.

The order is reversed and the cause remanded, with directions to the trial court to set aside its order granting defendant a new trial, and to re-instate the former judgment entered upon the verdict of the jury. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.