SPEED v. THE ATLANTIC & PACIFIC RAILROAD COMPANY, *Appellant.*

1.  **Master and Servant**: INDEPENDENT CONTRACTOR. The defendant, a railroad company, made a contract with one M., by which he was to take entire charge and control of defendant's freight business at the St. Louis station, loading and unloading cars, switching them back and forth in the yard, making up freight trains, and doing all other yard service necessary in the transaction of defendant's freight business. He was also, when requested, to haul freight from the levee for defendant; to prepare, execute and receive all necessary freight bills; to keep all necessary books of account, collect freight money and generally act as, and discharge all the duties of a station agent. To enable him properly to discharge his duties he was to have control over the grounds, yards and buildings, engines and cars of defendant at the station. Defendant was to furnish the necessary engines, and keep them in repair, and supplied with fuel, &c., and to employ the engineers and firemen, who were to be under M.'s control, and were to be paid by him. For his services M. was to be paid monthly at the rate of fifteen cents for each ton of freight received or delivered, and fifty cents for each car hauled from the levee. The contract was to continue for five years. The business was to be done under the control of defendant's superintendent and to his satisfaction, and if not so done, defendant could revoke the contract on twenty-four hours notice. M. performed no service for any other person than defendant. In an action to recover damages for injuries alleged to have been occasioned through the negligence of train-men in the employ of M.; *Held*, that M. was not an inde-

pendent contractor, but stood in the relation of servant to the defendant.

2. **Negligence:** EVIDENCE: FAILURE OF RAILROAD TO RING OR WHISTLE. The signal adopted and habitually used at a certain elevator to notify the laborers engaged in loading and unloading railroad cars, of the incoming of a train, was a cry by one of the employees of the elevator company: "The cars are coming." The evidence showed that this was a safer signal at that place than the ringing of a bell or sounding of a whistle would have been. In an action brought against the railroad company by a laborer who had been at work at the elevator for some weeks and knew the accustomed signal, to recover damages for an alleged negligent wounding by an incoming train; *Held,* that the failure to ring or whistle was not negligence.

3. ——: ——. But the fact that the accustomed signal was given by the servant of the elevator company would not exempt the railroad company from liability if its servants were guilty of negligence occasioning plaintiff's injury.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

. *C. M. Napton* for appellant, argued, *inter alia,* that the relation of master and servant did not exist between the railroad company and Merry, citing *Stevens v. Armstrong,* 6 N. Y. 435; *Wood v. Cobb,* 13 Allen (Mass.) 58; *Hill v. Morey,* 26 Vt. 178; *Vanderpool v. Husson,* 28 Barb. 196; *Cincinnati v. Stone,* 5 Ohio St. 38; *Samyn v. McClosky,* 2 Ohio St. 536; Wood on Master & Servant, p. 537, § 281, and note; Ib., p. 508, §§ 304, 306; Ib., p. 585, § 306; Ib., p. 630, § 217; Ib., pp. 619, 620, 626, 629; *Eaton v. European R. R. Co.,* 59 Me. 520; *Lucey v. Ingram,* 6 M. & W. ·302; *Bowcher v. Noidstrom,* 1 Taunt. 568; *Nicholson v. Mounsey,* 15 East 384; *Charles v. Tayler,* 7 C. L. J. 451; *Laugher v. Pointer,* 5 B. & C. 547.

*Dryden & Dryden* for respondent, as to the existence of the relation of master and servant, cited *Cincinnati v. Stone,* 5 Ohio St. 38; *St. Paul v. Seitz,* 3 Minn. 297; *Schwartz v. Gilmore,* 45 Ill. 455; *Morgan v. Bowman,* 22 Mo. 538; Shear. &. Redf. on Neg., (3 Ed.) §§ 73, 76, 77, 78, 79, 81, 81a, 74; *Pack v. Mayor of New York,* 8 N. Y. 222; *Kelly*

*v. Mayor of New York*, 11 N. Y. 435; *Barry v. St. Louis*, 17
Mo. 121; *Robinson v. Webb*, 11 Bush 465; *Schular v. Hudson River Ry. Co.*, 38 Barb. 653; *Allen v. Willard*, 57 Pa.
St. 382; Shear. & Redf. on Neg., (3 Ed.) § 74; *Brackett v.*
*Lubke*, 4 Allen 139; *Quarman v. Burnett*, 6 Mee. & W.
497; *Laugher v. Pointer*, 5 B. & C. 549; *The Halley*, 37 L.
J. (Adm.) 36; *Kelly v. Mayor*, 1 Kern. 436; *Cuff v. New*
*York Ry. Co.*, 9 Am. Law Reg. (N. S.) 541; *Hobbit v. London &*
*Northwestern Ry. Co.*, 4 Exch. 253; *Horner v. Nicholson*, 56
Mo. 220; *Dalyell v. Tyrer*, El., Bl. & El. 899; *Crockett v.*
*Calvert*, 8 Ind. 127; *Callahan v. R. R. Co.*, 23 Iowa 564;
*Annett v. Foster*, 1 Daly 502; Abbott on Shipping, (8 London Ed.) 228; *Sadler v. Henlock*, 4 El. & Bl. 570; *Fenton v.*
*Dublin Packet Co.*, 8 Ad. & El. 835.

HENRY, J.—This was an action by plaintiff to recover
damages for personal injuries received by him at the Central Elevator in St. Louis, while engaged in unloading and
removing cars of defendant.

It appears that while so engaged, an engine, with
loaded grain cars attached, belonging to the defendant, in

1. MASTER AND SERVANT: independent contractor.

backing down from the defendant's main
track, on a side track which ran into and
through the Central Elevator, were impelled against some
loaded cars standing on said side track, and these were
driven against some empty cars that plaintiff was pushing
on said side track, out of the way, after they had been unloaded, and the plaintiff was caught between the bumpers
of the two sets of cars, and was badly injured; and, in his
petition, alleged that this injury was occasioned by the negligence and carelessness of defendant's employees in managing said first above-mentioned moving train. Plaintiff
recovered a judgment in the circuit court, which was affirmed *pro forma* by the court of appeals, and defendant
has appealed from the judgment.

The plaintiff was not in the service of defendant, but
was employed by the elevator company. When the acci-

dent occurred, there was in force an agreement between the defendant and Charles H. Merry, providing that Merry should take the entire charge and control of the business of loading and unloading freight to and from the cars of defendant at the St. Louis station, and do the necessary switching of freight cars in the yard of defendant, including the making up of all freight trains, and all other yard service necessary in the transaction of the freight business of said company; that he should receive and promptly load all freight, etc., and, without unnecessary delay, unload from the cars all freight into the yards of defendant for that purpose, except live stock and other property of defendant, and safely keep and preserve the same until called for by the consignees; that, when specially requested by defendant, he would unload live stock and freight belonging to defendant, haul all cars loaded with fuel and other property owned by defendant from the levee to said station, and from the station to the levee, when required, and deliver same on such side track at the levee, or in the yard aforesaid, as should be designated by the company, for which he was to be paid fifty cents for each car so hauled, but not to be liable for the value of or charges on same, unless lost or injured through his fault; that said Merry should prepare and execute way bills for all freights leaving said station, and receive all way bills of freight arriving at the same from other stations, should keep all necessary books and accurate accounts of freight shipped and received as aforesaid, make out the expense bills, collect all money due for freight, and pay it over daily, in such manner and to such person as defendant should designate, and act and discharge all the duties of station agent of defendant at the St. Louis station.

By said agreement, all necessary authority and control over the grounds, yards and buildings at said station, including engines and cars, was given to Merry, to enable him properly to discharge his duties under the agreement. Also, defendant was to furnish him three yard and switch

engines, if necessary, and keep them in good repair; to employ engineers and firemen sufficient properly to attend said engines, and to furnish all necessary fuel and water for said engines; said engineers and firemen to be under the control of Merry, while on duty in the yards, and to be paid by him for their services. It was also stipulated that defendant should pay to Merry fifteen cents per ton for each ton of two thousand pounds of freight shipped to or from said station; and all payments for services of Merry to be made on or before the tenth day of each month, for the services of the preceding month. The agreement to continue in force for five years from its date, unless sooner annulled, it being expressly agreed that *all business to be transacted by said Merry was to be done in a manner satisfactory to the superintendent of defendant, and subject to his control, and defendant to have the right to annul this contract at any time after giving twenty-four hours' notice of its intention to do so, if the business imposed on said Merry should not be transacted in a manner satisfactory to said superintendent.*

Defendant insists that, under this agreement, Merry, and not the defendant, is liable to plaintiff for any injury sustained by him in consequence of any negligence in managing and operating the train which caused the accident; that the employees managing that train were not in the service of defendant, but were the servants of Merry, who exercised an independent employment. There is an irreconcilable conflict in the adjudications on this subject. The general principle is recognized everywhere that one is only liable for damages occasioned by the act of another when he stands in the relation of master to that other. It is an easy matter to state the general principle, but it is often extremely difficult to determine, from the facts in a given case, whether the relation of master and servant exists.

The case at bar is one which, to some extent, presents that difficulty. By the contract between Merry and the railroad company, the whole duty of receiving and for-

warding freight over the company's road from St. Louis is imposed upon Merry ; but these duties are just such duties as the station agent at that station would perform, or superintend others in the performance of, if no such special agreement had been made; and, by the terms of that contract, Merry was "to act and discharge all the duties of station agent of defendant at the St. Louis station." Other duties were imposed upon Merry by this contract, which would not, perhaps, appertain to his employment as station agent, and the stipulations in the contract in regard to such other duties, and the provisions with respect to the supply of firemen and engineers by the company, and the payment of Merry and such servants for their services, produce complications rendering it somewhat difficult to ascertain the precise relation in which Merry stood to the company.

The relation of master and servant does not cease " so long as the master reserves any control or right of control over the method and manner of doing the work, or the agencies by which it is to be effected." Wood on Master and Servant, § 281 ; *City of Cincinnati v. Stone*, 5 Ohio St. 41; *Schwartz v. Gilmore*, 45 Ill. 457. " In order to be held chargeable for the act of another, the person sought to be charged must at least have the right to direct such person's conduct, and to prescribe the mode and manner of doing the work." Wood on Master and Servant, *supra*. " The right of selection lies at the foundation of the responsibility of the master or principal for the acts of his servant." *Kelly v. The Mayor*, 1 Kern. 436. Many other tests are given, but no one can be relied upon as infallible. One test—Shearman & Redfield on Negligence, sec. 76, say the true test—is to ascertain whether the service is rendered in the course of an independent occupation, in which the servant represents the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. Another test given by Shearman and Redfield in their work, section 77, is the fact that the alleged servant never serves more than one person. This, they

say, furnishes a strong but not conclusive presumption that he has no independent occupation. Some cases rest upon the principle that, " where persons are invested by law with authority to execute a work involving, ordinarily, the exercise of the right of eminent domain, and always affecting rights of third persons, they are to be liable for the faithful execution of the power, and cannot escape responsibility by delegating to others the power intrusted to themselves." And one may " be a contractor as to a part of his service, and a servant as to part." Shearman and Redfield, § 77.

Applying these tests to the facts of this case, we have come to the conclusion that the relation of master and servant did exist betwixt Merry and the defendant. In the first place, all business transacted by Merry under the contract was to be performed under the supervision of the company's superintendent, who had express authority to direct the manner in which it should be done. The engineers and firemen were selected by the company, which could at any time remove them and substitute others. Merry was not in the service of any other person or company, and, by all of the above tests, he was the servant of the company, and not exercising an independent employment.

Besides, he was transacting a part of the business of the company, a common carrier, not as a lessee of the road and rolling stock, or either, but simply in loading and unloading freight which the company transported as a common carrier. As a common carrier, the law imposes certain obligations and liabilities upon the defendant, of which it is extremely doubtful whether it can relieve itself while it continues to be a common carrier, by any agreement with a third person. The doctrine might well apply that, where the law imposes a liability upon a company, in which it vests a franchise with exclusive privileges, it cannot escape responsibility by delegating to others the power to transact a portion of the business in which it is engaged, if the bus-

iness to be transacted by the employee be but a part of the general business in which the company is engaged.

If the company should lease the entire road, or an entire portion of the road, to another company, it would cease to be liable as a common carrier, as to the whole or such portion ; but it cannot parcel out its business to agents, and be a common carrier, without the liabilities of a common carrier. *Annett v. Foster*, 1 Daly N. Y. C. P. 502, was a case similar to this. The owner of a vessel and the master entered into a contract, by which the master was to make contracts for and receive freight, pay wharfage and all other expenses, and be permitted to select the kind of employment for the vessel, and receive a share of the vessel's earnings in lieu of other compensation. It was held that this contract did not relieve the owner from responsibility for damages occasioned by the negligent management of the vessel. Upon this, and the preceding authorities, we think it clear enough that the defendant would be liable to plaintiff in this case if he proved that the damage he sustained was occasioned by the carelessness of the servants managing the train in question.

The evidence proved that the employees of the elevator company, engaged in loading and unloading freight at the elevator, when cars were coming into the elevator, relied upon a signal of warning given by one in the employment of that company, by calling out " The cars are coming ;" that ringing the bell would have given no warning, for the reason that every half minute in the day engines passed near the elevator ringing bells. The signal adopted, therefore, would be the one which the employees would listen for and heed. A whistle might have startled them, because unusual at that place, but would have no more apprised them that a train was coming into the elevator than would the firing of a gun or a cannon. The signal adopted was adopted as the best means of warning the employees of the approach of a train. The plaintiff had worked for the elevator com-

2. NEGLIGENCE: evidence: failure of railroad to ring or whistle.

pany for some weeks when injured, and knew what signal was agreed and relied upon, and we repeat that it must be obvious that no other signal improvised for this single occasion, with no notice of its adoption to the employees, who would of course listen for the only warning ever given, would have answered the purpose. As well require the firing of a gun or a cannon, as the ringing of the bell or blowing of the whistle, under the circumstances. The statute requires no bell to be rung or whistle blown at that place.

Defendant's seventh instruction should have been given. It was as follows: "The court instructs the jury that if they believe it had been, ever since the elevator had been used, and was at the time of the accident, the custom not to ring the bell or sound the whistle, and not to give any other signal or warning of the intended movement of the cars, except a verbal notification given by the employees of the Central Elevator Company of the fact, and that the custom was known to the plaintiff, and with this knowledge he continued performing his work without objection, then the jury, in determining whether defendant's servants were guilty of negligence, will not consider whether the bell or whistle was sounded on this occasion, as the plaintiff cannot complain of the failure to ring the bell or sound the whistle."

Other instructions asked by defendant, to the effect that, if the customary signal was given, plaintiff could not recover, were properly refused. If the defendant's employees, in managing the train, were guilty of negligence, which was the proximate cause of the injury, and the injury would probably not have occurred if the train had carefully and properly approached the cars with which it collided, although the usual warning may have been given, the defendant was liable. If the usual warning was given and heard, but unheeded by the plaintiff, it would make a case of contributory negligence against him, but we apprehend that the fact that another person per-

formed the duty incumbent upon him, will not excuse the defendant's negligence, if it was the proximate cause of the injury. If the warning was given but not heard, and no fault was imputable to plaintiff for not hearing it, the fact that the signal was given does not exempt the defendant from liability for the consequences of its own negligence, or carelessness, or recklessness, which occasioned the damage, if such negligence, carelessness or recklessness was established.

Judgment of the court of appeals and circuit court reversed and cause remanded. All concur.