No. 437

First Circuit

## LANDRY v. McNEIL HUNTER MOTOR CO. ET AL.

(May 7, 1929.  Opinion and Decree.)
(June 28, 1929.  Rehearing Refused.)
(October 8, 1929.  Writ of Certiorari and Review Refused by Supreme Court.)

Chappuis & Chappuis, of Crowley, attorneys for plaintiff, appellee.

P. M. Milner, of New Orleans, and W. J. Carmouche, of Crowley, attorneys for defendant, McNeil · Hunter Motor Co., defendant, appellant.

St. Clair Adams, of New Orleans, and Medlenka, Bruner & Chambers, of Crowley, attorneys for defendant Acadia Rice Mills, appellant.

LECHE, J. Adonis Landry, a resident of the town of Rayne, parish of Acadia, while on his way home during a heavy shower of rain stopped for shelter near the door forming the side entrance of the garage and automobile repair plant of the McNeil Hunter Motor Company, Inc., and there engaged in conversation with Ovide Servat, a mechanic, and Hoffpauir, foreman of the garage, when he was struck by an incoming Ford sedan automobile, under the control of Archie Morgan, also a mechanic employed in the same garage. Both of his legs were broken and he suffered severe physical injuries. He thereupon filed the present suit against the McNeil Hunter Motor Company, Inc., and the Acadia Rice Mills, Inc., for damages in the sum of $54,000, with legal interest and costs of court. The district court awarded him a judgment against the two defendants jointly and in solido, in the sum of $7,500. Both defendants have appealed, and plain-

tiff has answered the appeal, and prays for an increase of judgment to the sum of $24,734.40.

The main facts in the case are not seriously questioned, except as to minor details, but the conclusions from these facts are very earnestly contested, and are the subject of forceful arguments by experienced and learned counsel on behalf of each of the three parties litigant.

It appears that A. L. Daboval, a rice grader and an employee of the Acadia Rice Mills, drove a Ford sedan, the property of the Rice Mills, to the McNeil Hunter garage, in order to have broken glasses inclosing the top of the Ford sedan replaced with new whole glasses. That was the only repair which was indicated as the purpose of bringing the Ford to the garage. Daboval spoke to Hoffpauir, foreman of the garage, who told him that the job would require an hour or two. A heavy rain was falling at the time, and at the request of Daboval, Hoffpauir directed Archie Morgan, a mechanic in the employ of the repair shop, to go with Daboval to the rice mill, some 8 or 10 blocks distant, and bring back the Ford to make the repairs requested. Morgan got into the automobile, sat next to Daboval, and when they reached the rice mill, Daboval got out and Morgan moved over into the driver's seat and started back to the garage. As Morgan approached the garage, he realized upon turning, at a distance estimated at 35 feet from the doorway of the garage building, that he had lost control of the motor. The engine was racing, and he could not stop it. It seems that the accelerator got bound, or was stuck, and though he tried, he could not release it. He says that he cried out aloud to Hoffpauir, Servat, and Landry, who were near the door, "Look out," for under great excitement in this sudden and unlooked for situation, his foot had slipped off the brake pedal which was wet and slippery, and he could not foretell what was going to happen. He could neither stop nor guide the automobile which was running at a speed estimated at 12 miles per hour. Instead of entering the open door of the garage, the car veered to the right and struck the door frame, pinning Landry against the wall, and breaking both of the latter's legs. It is but natural that Morgan should have lost the use of his better judgment in this trying situation, which came upon him so quickly and unexpectedly that he could not even guide the automobile through the open doorway. Hoffpauir and Servat were both standing in the open space, in the doorway, and they rapidly moved away. Hoffpauir went into the garage and Servat passed in front of Landry and remained on the sidewalk. Landry did not move, though he says he saw the car coming towards him. Landry says further that he did not hear Morgan cry, "Look out," and that he thought that Morgan was playing a practical joke to frighten Hoffpauir and Servat who were in the doorway. Milner, another mechanic, employed in the same garage, says he was standing on the sidewalk, near the door of the garage, on the opposite side from the place where Landry was, that he heard Morgan cry "Look out," and that he got out of the way. After the accident it is said that Landry made the remark that he believed Morgan was only joking, and it appears that he made this remark, not because he had heard Morgan cry, "Look out," but because he thought Morgan was guiding the car towards Hoffpauir and Servat in a spirit of levity, to frighten them.

At the time of the accident the Ford sedan was in the possession of and under

the control of the McNeil Hunter Motor Company. Morgan accompanied Daboval to the rice mill, not as agent of the rice mill, but as an employee of the motor company, upon the instructions of Hoffpauir, foreman of the shop. Of this we believe there is no question of doubt. It is shown that it was customary for the motor company to accept delivery of automobiles to be repaired, wherever the customer might request, in the town of Rayne, and that return delivery from the motor company to the owner of the automobile was, upon request, made in the same manner, without reservation of nonliability in case of accident. It therefore seems to follow as a consequence that when Daboval got out of the automobile at the rice mill, delivery to Morgan was delivery to the motor company.

The questions then to be decided are whether there was fault or negligence on the part of either or both of the defendants, and if so, then, whether or not plaintiff himself was guilty of contributory negligence.

Nearly every automobile is equipped with two gas controls, one that may be regulated by hand on top of or near the steering wheel, and the other by a pedal which is operated by the chauffeur's foot. The model Ford involved in this case was equipped at the factory solely with a hand gas-control, and in order to enhance facility in managing the car, Daboval, acting on behalf of the rice mill, bought an accelerator or pedal gas-control from the Western Auto Supply House in New Orleans and himself placed it in position on the Ford sedan. One distinct difference between the hand and foot controls is that the hand control remains wherever it is placed by the chauffeur's hand, while the foot control, as soon as released by taking the foot off the pedal, is automatically returned, by means of a spring, to its neutral or noneffective position. Both controls are used for the purpose of feeding gasoline from the carburetor to the motor. The hand control, in order to be operated, must be pushed and pulled by the hand, while the foot control may only be pushed by pressure of the foot and it is pulled back by means of a spring. The accelerator bought by the rice mill and installed on its Ford sedan is what is called among auto mechanics an "outlawed" part. It was not made by the manufacturer of the Ford automobile, and the automobile itself is not designed to be equipped with it. Daboval says that about three weeks before the accident which gave rise to this suit, this same accelerator got stuck while he was using the car and that the rice mill engineer found that the rod connecting it to the carburetor was bent, and after straightening it with his hand it again operated properly. When Morgan took control of the car at the rice mill, in order to drive it back to the garage, he knew nothing of this weakness or defect of the accelerator, and as he made the turn from the street to enter the garage, the accelerator did as it had done before, it stuck, and though Morgan tried to release it with his foot, he was unsuccessful, and the engine fed with an oversupply of gasoline raced at great speed. His other foot slipped off the brake pedal, which had gotten wet from the rain, he lost his better judgment in this sudden and unforseeable emergency, and ran into the door frame of the garage, causing great personal injury to plaintiff. Under these circumstances we do not see that any fault or negligence can be attributed to Morgan or to the motor company, and that the prime and proximate cause of the accident was due to the fault of the

rice mill in equipping the car with a defective attachment or accessory, the "outlawed" accelerator. It may be argued that Morgan could have cut out the ignition by using the control on the dash, or could have used the emergency brake, which witnesses say is seldom used on Fords, and this may appear as reasonable while considering the case in the quiet chambers of the courtroom; but when one places himself in the position of Morgan, in a sudden emergency, his conduct and his failure to resort to other means to avert the accident is quite excusable. It must be borne in mind that from the time he realized that the accelerator could not be released, to the time he ran into the wall of the garage, was only a fraction of a minute, and the dangerous speed at which he was compelled to approach the entrance to the garage left him no time to exercise deliberate judgment.

The same reasons which excuse Morgan's conduct apply equally in excusing plaintiff from changing his position as the car approached the entrance to the garage. Hoffpauir, Servat, and Milner, practical mechanics and no doubt experienced in the handling of automobiles, were impressed, as soon as Morgan turned from the street to enter the garage, with the idea that he had lost control of the car, and it is only reasonable that Landry, the plaintiff, a carpenter by trade, should not have been so impressed, especially as he was not standing in the doorway. For these reasons we do not believe that Landry was guilty of contributory negligence.

The only other question at issue on this appeal is the quantum of damages. It appears from the evidence that both of plaintiff's legs were broken and that he was compelled to undergo several surgical operations, the last of which consisted of placing a Lane plate where the ends of a bone had failed to properly unite. It also appears that he was confined to a sanitarium for a long time, and that his earning capacity was completely destroyed for quite a while, and in the opinion of experts will in time only be restored to 80 per cent. of its normal condition.

Our jurisprudence abounds with decisions holding that the amount of an award in damages is peculiarly within the discretion of juries and trial courts. Surrounding local conditions and circumstances are more within their knowledge and appreciation, and their judgment is of great weight and should not be disturbed unless for serious or grave error. We see no reason, although the amount of the award in damages may appear to be inadequate, to disturb the finding in this case, and the award will remain as fixed by the trial court.

For these reasons the judgment of the district court is avoided and reversed as to the McNeil Hunter Motor Company, and plaintiff's demand against that company is rejected, but said judgment is otherwise affirmed as against the Acadia Rice Mills, Inc., at the cost of said rice mills in both courts.