J. FRANK ANDRES, RESPONDENT, v. SOPHRONIA E. COX, MABEL DUSTIN AND MIKE REDEL, DEFENDANTS; MABEL DUSTIN, APPELLANT.*— 23 S. W. (2d) 1066.

St. Louis Court of Appeals. Opinion filed February 4, 1930.

1140

*Corpus Juris-Cyc References: Master and Servant, 39CJ, section 1517, p. 1316, n. 3; section 1518, p. 1316, n. 7; section 1584, p. 1357, n. 8; section 1595, p. 1364, n. 32; Motor Vehicles, 42CJ, section 857, p. 1096, n. 46; section 1007, p. 1209, n. 77; section 1093, p. 1259, n. 5; Trial, 38Cyc, p. 1547, n. 11.

*W. H. Guest* and *C. P. Berry* for appellant.

*Foristel, Mudd, Blair & Habenicht* for respondent.

SUTTON, C.—This is an action to recover damages for personal injuries sustained by plaintiff on June 11, 1926, when he was struck by an automobile, driven by defendant Mike Redel, and belonging to defendant Mabel Dustin, at Delmar and Clara avenues, in the city of St. Louis. The cause was tried to a jury. At the close of plaintiff's case, the court gave an instruction in the nature of a demurrer to the evidence on behalf of defendant Sophronia E. Cox, whereupon plaintiff took an involuntary nonsuit as to said defendant, and the cause proceeded against the remaining defendants, Mabel Dustin and Mike Redel. The jury returned a verdict in favor of plaintiff against both said defendants for $5,000, and defendant Mabel Dustin appeals.

The appellant assigns error here upon the refusal of her instruction in the nature of a demurrer to the evidence. No question is raised as to the negligence of defendant Mike Redel. The only question raised relates to the responsibility, or not, of appellant for the negligent act of Redel which caused respondent's injury. Appellant contends that Redel, while driving her automobile, was acting in the capacity of an independent contractor, whereas respondent contends that he was her servant at the time acting in the scope of his employment.

Relative to this issue, defendant Redel, who was produced as a witness by respondent, testified:

"I am an automobile mechanic. On June 11, 1926, I had an automobile repair shop at 2821 Easton avenue, in St. Louis. I did some repair work on an automobile brought into my shop by Mrs. Dustin. I had occasion to make repairs on this automobile prior to June 11, 1926. Mrs. Dustin brought the automobile to my shop about three o'clock in the afternoon of that day. She instructed me to make repairs on the automobile and to deliver it to her home at 5800 Westminster after the repairs were made. She instructed me to repair the car so it would run decently, and then bring it out to her home some time after 8:30 or nine o'clock. She said she wanted the car at that time, because she had an engagement. I undertook to deliver the car in compliance with those instructions. When I got to the Dustin home, I guess it was between 8:30 and nine o'clock, there wasn't any one there, and I waited a little bit, and I went down to Down's Auto Company in the 5600 block on Delmar avenue, and from there I called Mrs. Dustin over the telephone, and she said: 'All right take it on back, and whatever it needs—the clutch to be repaired—and fix it.' She said to take it back and fix whatever was needed. I told her the clutch was bad, and she said to take it back and fix it. I then proceeded back to my place of business, going east on Delmar. On approaching the intersection of Clara and Delmar, I saw a man crossing Delmar about forty feet away, and about eight feet south of the safety zone, walking south, and I pulled my car to the left, and as I did, I ran into the safety zone and hit a number of persons.

Mr. Andres was the first man I hit. When Mrs. Dustin left the automobile in my repair shop, there was a leak in the carburetor. She told me to merely fix the leak in the carburetor, and nothing else. I had completed the job when I repaired the carburetor—when I repaired what she wanted me to do. The leak in the carburetor was all we discovered was wrong when she came with the automobile. She told me to look over the car, and make repairs that were necessary. I told her I didn't want to promise her too much; I would fix the carburetor, and fix it so it would run. I sent out for a part, and took the carburetor down and fixed it, and the car would run, but there were other things to be done like tightening the clutch. I did not have time to fix them. The car would operate—you could get along with it, but the job wasn't completed. I didn't have time to finish the car, but finished it so that she could use it that evening. So when I fixed the carburetor I took the car out to Mrs. Dustin's home between 8:30 and nine o'clock. She lived in an apartment. I took it there at that time because she wanted to use the car that evening. I drove up in front of the apartment and went up to the second floor and rang the bell, and rang the bell again, and a lady said to me that Mrs. Dustin was not in, and I went back and got into the car and waited a few minutes, and then drove to Down's Auto Company, and called from there. She said she didn't want the car that night any more, to take it back, and fix it so she would have no more trouble with it, and she said: 'Take it back with you, and complete the thing.' She said: 'Take the car on back with you and fix the thing so I won't have any more trouble with it.' I told her the clutch needed adjusting, and a few little things, and she told me to take it on back with me. When I took the car to Mrs. Dustin's home, there was a locking device on the car, but it was broken. On several occasions before this, I delivered the car to Mrs. Dustin at her home when I made repairs on it.''

Appellant testified, on her own behalf, as follows:

''On June 11, 1926, I was living at 5728 Westminster. I know Mike Redel in a business way. I brought my machine down to his garage to be repaired on June 11, 1926. I asked him to repair it, is all. I didn't know what was the matter with it. He was to find that out. The arrangement we had about returning it, he volunteered returning it; when he didn't have anything to do he would bring it back, but I usually went for it. On this particular occasion I did not tell him anything at all about returning the car to me. I didn't have any idea of getting it back then. I did not tell him to return the car to me that evening. I couldn't say positively whether or not I was at home that evening. I don't remember now whether I was or not. I did not get a telephone call that evening or any time during that day from Mike Redel. It was some time in the afternoon of that

day that I delivered the car to him. He called me up over the telephone, and told me about the accident the next day. That was the first I heard of it. He did not say anything about where he had been with the car. He did not give me any explanation for being out with the car. He simply told me he had the car out and had the accident. He probably figured that I was liable. I did not at any time after I left the car at his shop that afternoon to be repaired tell him to take the car back to the garage and fix the clutch. I got the car myself the next day. I did not have any conversation about it at all. I went down and got it. He didn't deliver it to me. It is not a fact that I told him to bring the car out that evening. It is not a fact that he called me up that evening. He did not. I usually went for the car myself when he repaired it. I remember one time, in the last month before the accident, he brought the car out to my home, and that was of his own accord. I had no arrangement with him by which he brought the car to me regularly. I went for it myself. On this particular evening I had no idea or expectation of getting the car back from him. I did not give him any orders on this occasion to bring the car back to my home. I had no expectation of getting it. There was too much to fix on it to get it back that evening. Some time after the accident Mr. Freund, representing the plaintiff, called to see me, and talked with me. After talking with me, he wrote a statement, and I signed it. The statement I signed is substantially as I stated it to him. I probably did not read the paper. I was speaking to him at the time and probably ran through it. I do not remember this part of the statement: 'I gave Mr. Redel orders to bring the car to my home after he completed the repairs.' I didn't give Mr. Redel orders at all. It wasn't understood as such. I did not tell Redel on this particular day to return the car to me after the repairs were completed. I never have given him orders to return the car to me.''

The statement signed by appellant is as follows:

''On the evening of June 11, 1926, I drove my car down to 2821 Easton avenue to Mike Redel's shop to have him repair it, as the carburetor was leaking. I left the car there, so that Mr. Redel could repair it. I did not wait for it to be repaired. I gave Mr. Redel orders to bring the car to my home after he had completed his repairs.

''On the evening of the above date Mr. Redel informed me that the repairs had been completed, and that he had driven the car to my home, and after arriving there found that I was not at home, and not wanting to let the car stand out on the street decided to drive it back to his shop. He had an accident at Clara avenue and Delmar boulevard and injured an old man by the name of J. Frank Andres.''

In her deposition, taken a few months after the accident, appellant testified:

"On the afternoon of June 11, 1926, when I took my car to Redel's shop, I did not leave any instructions with him with reference to what to do with the car, not any more than just that I had always told him that whenever it was finished, he could bring it back or leave it, whichever was convenient. The general arrangement between me and him was when he had finished the car he could bring it back if he had time or it was convenient for him to do so. I did not get the car back the same day I took it to his shop. I got it back the next day. I first heard of the accident the next morning after it occurred. Redel had been doing the repair work on the car right along. He always had done it. He would always bring the car back for me. He did it a lot of times. Sometimes I would go back down there, but he did it a lot. That was the arrangement made between us. I would not say that on the evening of the accident he was bringing the car over at my request, and with my permission. I would not say that he did then. If he had brought it out there, it would have been all right. In other words, it would have been exactly in compliance with the previous arrangement I had made with him."

It was not shown that any further repairs were made on the car after Redel returned it to his shop.

In passing upon a demurrer to the evidence, the court is required to draw every inference of fact in favor of the party offering the evidence, which the jury might, with any degree of propriety, have drawn in his favor, and if, when received in this light, it is insufficient to support a verdict in his favor a demurrer should be sustained. But the court is not at liberty in passing on such demurrer to make inferences of fact in favor of the defendant to countervail or overthrow either presumptions of law or inferences of fact in favor of the plaintiff. That would clearly be usurping the province of the jury. [Buesching v. St. Louis Gaslight Co., 73 Mo. 219, l. c. 231; Karguth v. Donk Bros. Coal & Coke Co., 299 Mo. 580, l. c. 597, 253 S. W. 367; Sexton v. Sexton, 295 Mo. 134, 243 S. W. 315.]

The general rule is that where one who has contracted with a competent and fit person, exercising an independent occupation, to do a piece of work for him, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the result of his work, the relationship is that of an independent contractor, and not that of a servant. [Baker v. Scott County Milling Co. (Mo.), 20 S. W. (2d) 494; Semper v. American Press, 217 Mo. App. 55, 273 S. W. 186; Hoelker v. American Press (Mo.), 296 S. W. 1008; Speed v. Atlantic & Pacific R. Co., 71 Mo. 303.] The right of control, or the want of it, is determinative of the relationship; for one who has no right of control over another ought not be required to answer for his acts. and. on the other hand, if one has such right of control

he should be answerable. This is the crucial test of the relationship, and is determinative of it. Whether or not the right of control existed is ordinarily a question of fact for the jury, and is usually arrived at by inference from the terms of the contract, the character of the employment, and all the relevant facts and circumstances. [Hoelker v. American Press (Mo.), 296 S. W. 1008, l. c. 1011.] And the court is not justified in taking such question from the jury unless the evidence in regard to it is very clear and unequivocal. Where the facts are in dispute, or more than one inference can be drawn therefrom, the question is for the jury. To justify the taking of the question from the jury, it is necessary for it to be held that the evidence definitely shows facts constituting the person rendering the service to be an independent contractor, and enforces that conclusion as a matter of law. [Hoelker v. American Press (Mo.), 296 S. W. 1008, l. c. 1011; 14 R. C. L. 79; Lane v. Roth, 195 Fed. 255.] The right of control, or the want of it, is seldom fixed in express terms by the contract of employment, and even where there is a contract in writing, which in express terms negatives the right of control, it is not con clusive. The person injured is not a party to such contract, and is not bound by it; he may produce evidence to show the actual agreement and the real relationship of the parties. 14 R. C. L. 78. It is generally held that when it appears that the actual tort feasor was at the time the injury occurred in the employment of the party whom it is sought to hold responsible for the injury, the latter, if he relies on that defense, has the burden of proving that the tort feasor was an independent contractor. [Central Coal & Iron Co. v. Grider, 65 L. R. A. 455, l. c. 459; 14 R. C. L. 78; Semper v. American Press, 217 Mo. App. 55, 273 S. W. 186, l. c. 189; Dillon v. Hunt, 82 Mo. 150, l. c. 155; Johnson v. Great Northern Lumber Co. (Wash.), 93 Pac. 516; Hoelker v. American Press (Mo.), 296 S. W. 1008, l. c. 1011.] In determining whether or not one was an independent contractor, it is important to ascertain whether he rendered the service in the course of an independent occupation. The fact that he never served more than one person furnishes a strong presumption that he had no independent occupation. [Speed v. Atlantic & Pacific R. Co., 71 Mo. 303, l. c. 308.] It is pertinent also to inquire whether the work done is such as is usually done by an independent contractor. One may be an independent contractor as to a part of his service and a mere servant as to part. [Speed v. Atlantic & Pacific R. Co., 71 Mo. 303, l. c. 309; Marron v. Bohannan, 104 Conn. 467.] One who drives a car as a mere accommodation or favor to the owner of the car is the servant of the owner. [Janik v. Ford Motor Co., 180 Mich. 557, l. c. 567; Ryciak v. New York Oversea Co., 200 N. Y. S. 379; Marron v. Bohannan, 104 Conn. 467, l. c. 468.] Where one exercising an independent occupation contracts to accomplish a specified

piece of work, such as the erection of a building, for an agreed lump sum, there is a typical relationship of independent contractor. This is so because one who undertakes to accomplish a specified result for a lump sum, would not ordinarily be expected to subject himself to the control of the person employing him, as to the methods of doing the work.

That Redel was exercising an independent occupation as a repair man, and rendered the service of repairing the appellant's car in the course of such occupation, and under circumstances which made him an independent contractor as to that service, there seems to be no question, but it does not necessarily follow from this that he was an independent contractor as to the service he rendered in an attempt to deliver the car to the appellant after the repairs were made. The delivery of the car was no part of concomitant of his independent occupation as a repair man. Nor was it a necessary or usual incident to the work of repairing the car. It was not a part of his duties as a repair man, under his contract of employment to repair the car, unless made so by the express terms of the contract. In the absence of a contract or custom, the bailee of a car, for the purpose of making repairs upon it, is under no obligation to make delivery of the car to the owner, either at his place of business or his residence. [Marron v. Bohannan, 104 Conn. 467, 1. c. 470.] In the present case no custom of making such delivery was shown. So far as the evidence shows, Redel never delivered cars upon which he had made repairs to the owners at their homes or places of business, or at any other place away from his repair shop, except that on a number of occasions he delivered the appellant's car to her at her home, and this was done as a mere accommodation or favor, and only as suited his convenience, and without any obligation to do so. If the driving of appellant's car by Redel in his attempt to deliver it at her home was done, upon completion of the repairs he was employed to make, as a mere accommodation or favor to her, and with her acquiescence and consent, and not in pursuance of an agreement with him to include this act of driving as a part of the general charge inclusive of the repairs to the car, then in so driving the car he was acting as a servant, and not as an independent contractor, and if he was acting as her servant in so driving her car to her home, and on arriving at her home found no one there to receive the car, he had implied authority to return the car to his shop, and, if he did so, without any request or direction from her to do so for the purpose of making further repairs upon it, he was, in so doing, still acting as her servant. The evidence as to the relationship between Redel and appellant, in driving the car at the time of the accident, is conflicting and indefinite. That he was in her employment in some capacity is definitely shown. The burden was on appellant to show that he was acting as an independent con-

tractor, and not as her servant. We think the evidence, allowing such inferences as the jury might reasonably have drawn from the facts proved, warranted a finding by the jury that there was no contract for the delivery of her car to her at her home after the repairs were made, but that he undertook, after completion of the repairs he was employed to make, to deliver the car pursuant to the previous arrangement that he would deliver the car to her or not as suited his convenience, for her accommodation, and as a favor to her, and that upon arriving at her home and finding no one there to receive the car, he undertook, without any further request or direction from her, to drive the car back to his shop, and in so doing negligently ran upon and injured plaintiff. Under this view of the evidence, we cannot say that it definitely shows facts constituting Redel to be an independent contractor in driving appellant's car, and enforces that conclusion as a matter of law.

Appellant relies on Woods v. Bowman, 200 Ill. App. 612, in support of her insistence that Redel was an independent contractor in driving her car at the time the accident occurred. In that case Bowman was the administrator of an estate, among the assets of which there were five automobiles. To prepare the cars for sale, Bowman made an agreement with Hardin, who operated a garage, to get the cars, take them to the garage, repair them, and return them. Hardin took the cars and repaired them, and was returning them when the plaintiff was struck and injured. The method pursued in returning the cars was as follows: An assistant of Hardin would drive one of the cars to the farm where the sale was to be held, and Hardin would follow him in another of the cars so as to bring back the assistant. Several cars had been delivered in this manner, and it was while Hardin was returning with his assistant in one of the cars in order to take out another car that the accident happened. It was held that Hardin was a bailee of the cars, acting as an independent contractor, and that Bowman was not liable for his negligence. If there was that sort of case conclusively shown here, we would unhesitatingly hold the same way. In that case there was a definite contract before the repairs were made that the repair man should call for and return the cars. The repair man was obligated under his contract of employment to return the cars to the owner. This was his duty under the contract of employment as a part of the general charge inclusive of the repairs. Whereas, in the present case, the jury were entitled to say there was no such contract, but that the repair man undertook to return the car to the owner merely as an accommodation or favor to her and without obligation to do so, but with her consent and acquiescence, under a previous arrangement that he would do so, or not, as might suit his convenience, or as he saw fit, and having found no one at her home to receive the car returned it to the shop

without further request or direction from her. The distinction is obvious.

Cases relied on by appellant, where the owners of cars were held liable for the negligence of repair men while driving the cars for the purpose of testing them, are clearly distinguishable from the present case.

A number of other cases pressed for our attention are like the Woods case, and need not be further noticed.

The commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Becker* and *Nipper, JJ.,* concur; *Haid, P. J.,* absent.