STANOLIND OIL & GAS CO. et al., v. TROSCLAIR.

No. 12059.

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1948.

Rehearing Denied March 17, 1948.

Writ of Certiorari Denied May 17, 1948.

See 68 S.Ct. 1086.

St. Clair Adams, Jr., of New Orleans, La., for appellants.

A. Wilmot Dalferes, of Lafayette, La., for appellee.

Before HUTCHESON, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellee, a citizen and resident of Louisiana, was injured and his car was damaged in a collision of his automobile with a Mercury sedan at a street intersection in the city of Lafayette, Louisiana, in February, 1945. The Mercury was owned by the Stanolind Oil & Gas Co., a Delaware corporation, and was insured against public liability by the Standard Surety & Casualty Co., a New York corporation. Alleging that the accident was due to the careless and reckless driving of one P. E. Stutes as agent of Stanolind Oil & Gas Co., appellee, plaintiff below, sued that company and its insurer, the Standard Surety & Casualty Co. of New York,[1] to recover damages in the sum of $27,000.

Both defendants, among other defenses, pleaded that P. E. Stutes, the driver of the Mercury sedan was not an employee, agent, or representative of the Stanolind Oil & Gas Co., consequently neither that company nor its insurer was liable under the doctrine of respondeat superior for the acts of Stutes; the Standard Surety & Casualty Co. further pleaded its nonliability on the ground that its policy excepted "any person or organization, * * * or employee thereof, operating an automobile repair shop, public garage, * * * service station * * *, with respect to any accident arising out of the operation thereof."

The case was tried to a jury and resulted in a verdict in favor of the plaintiff in the sum of $11,000. From the judgment entered upon the verdict, defendants prosecute this appeal.

Appellants here urge that the trial court erred: (1) in overruling their motions for directed verdict filed at the conclusion of the evidence,[2] (2) in overruling their motions for judgment notwithstanding the verdict;[3] (3) in giving inconsistent charges to the jury; and (4) in denying motions for a new trial.

The Stanolind Oil & Gas Co. was engaged in the drilling of an oil and gas well near Lafayette, La.; one W. C. Wiggins was in charge of the drilling operations. About twelve o'clock noon on the day of the accident, Wiggins drove the Mercury to the Evangeline Auto Hotel, a garage, and requested Stutes, the manager of the garage and one of its owners, to accompany him to his home, then to drive the car back to the garage and wash and grease it. Stutes accompanied Wiggins to his home, where Wiggins got out of the car and Stutes took it over. Stutes was driving the Mercury back to the garage to grease and wash it when the collision occurred which resulted in the personal injuries and car damage for which the plaintiff is suing.

In his charge the trial judge said to the jury: "If you find from the preponderance of the evidence that Mr. Wiggins paid no extra sum for being accompanied by Mr. Stutes to a point on Haig Street where Wiggins lived, nor any extra sum for the purpose of returning the Mercury car of Stanolind Oil & Gas Company to Stutes' garages to be washed and greased, and that this was a mere accommodation to the Stanolind Oil & Gas Company, the Court charges you that at the time Mr. Stutes moved over to the driver's seat to drive the Mercury car to his garage to be washed and greased, that he became the agent or servant of the defendant, Stanolind Oil & Gas Company."

Then, almost immediately thereafter, he said to them: "If you find from the evidence that the Evangeline Auto Hotel, owned by said Stutes and Frank Stutes, and managed by the said P. E. Stutes, customarily and as a common practice and

---

[1] Act 55 of the Legislature of Louisiana for the year 1930 permits an injured person to sue the insurer in a direct action.

[2] Each defendant in its motion urged that the evidence failed to establish that Stutes was acting as agent of the Stanolind Oil & Gas Co. at the time of the accident. The insurance company urged in addition that the evidence is uncontradicted that Stutes was part owner and manager of an automobile repair shop and service station; that he had received the car to service it; and that the accident, therefore, was not within the policy coverage.

[3] These motions set forth the same grounds as the motions for a directed verdict.

whenever requested to do so by anyone of their customers, had one of their employees or representatives drive such customers to their homes, for the purpose of then returning the automobile to be serviced, and that such practice was a regular service furnished by the Evangeline Auto Hotel, I charge you that in driving such automobiles for the above stated purposes, the employees and representatives of the Evangeline Auto Hotel would not become employees, agents, or representatives of the owner of the automobile, but would be independent contractors for whose actions the owner of the automobile and the insurer would not be legally liable."

■ These charges though not inconsistent may have tended to confuse the jury. In the first, the court told the jury that if Stutes was driving the car to the garage as a mere accommodation to Wiggins for which no extra charge was made, Stutes would be an agent of the Stanolind Oil & Gas Co., while he drove the car. In the second, the court told the jury that if Stutes customarily and as a common practice, when requested to do so by his customers, rendered such service, Stutes would not be an agent of the Stanolind Oil & Gas Co. but would be an independent contractor. The confusion, if any, lies in the failure of the court to distinguish clearly between a mere accommodation and a common practice: the former is an unusual act, seldom performed, personal to the one being served, while the latter is an act done as a general business custom. The court should have explained to the jury that where the service is performed as a mere accommodation, the payment of an extra sum for the service rendered is necessary to make the garage owner an independent contractor; but that where the service performed is a matter of common practice and custom, then even without specific extra charge such practice and custom makes the garage owner an independent contractor.

The Court of Appeal, First Circuit, of the State of Louisiana had before it in Landry v. McNeil Hunter Motor Co., Inc., et al., 11 La.App. 380, 122 So. 293, a case almost identical with the case at bar. The facts and the law applicable thereto are set out in the body of the court's opinion in these words:

"It appears that A. L. Daboval, a rice grader and an employee of the Acadia Rice Mills, drove a Ford sedan, the property of the Rice Mills, to the McNeil Hunter Garage, in order to have broken glasses inclosing the top of the Ford sedan replaced with new whole glasses. That was the only repair which was indicated as the purpose of bringing the Ford to the garage. Daboval spoke to Hoffpauir, foreman of the garage, who told him that the job would require an hour or two. A heavy rain was falling at the time, and at the request of Daboval, Hoffpauir directed Archie Morgan, a mechanic in the employ of the repair shop, to go with Daboval to the rice mill, some 8 or 10 blocks distant, and bring back the Ford to make the repairs requested. Morgan got into the automobile, sat next to Daboval, and when they reached the rice mill, Daboval got out and Morgan moved over into the driver's seat and started back to the garage. [On the way back, the mechanic ran the car into and injured Landry.]

\* \* \* \* \* \*

"At the time of the accident the Ford sedan was in the possession of and under the control of the McNeil Hunter Motor Company. Morgan accompanied Daboval to the rice mill, not as agent of the rice mill, but as an employee of the motor company, upon the instructions of Hoffpauir, foreman of the shop. Of this we believe there is not question or doubt. *It is shown that it was customary for the motor company to accept delivery of automobiles to be repaired, wherever the customer might request, in the town of Rayne, and that return delivery from the motor company to the owner of the automobile was, upon request, made in the same manner, without reservation of nonliability in case of accident.* It therefore seems to follow as a consequence that when Daboval got out of the automobile at the rice mill, delivery to Morgan was delivery to the motor company." [4] *(Emphasis added.)*

---

[4] Application was made to the Supreme Court of Louisiana for writs of certiorari and review in this case, and that court in refusing to issue the writs, said: "Refused, judgment correct."

232

A somewhat similar case came before the Court of Appeal for the Parish of Orleans in Pugh v. Henritzy, et al., La.App., 151 So. 668. The court there found that the charge for repairs included an extra sum for driving the owner home and returning the car to the garage, and held that the garage was liable as an independent contractor. Referring to the case of Andres v. Cox, 223 Mo.App. 1139, 23 S.W.2d 1066, 1070, the court in the Pugh case [151 So. 669], said:

"In the case of Andres v. Cox, * * * the garageman, after making repairs on the defendant's car, drove out to plaintiff's [sic] home, but finding no one there, was returning to his shop, when he negligently ran into and injured the plaintiff. A demurrer to the evidence was filed by the defendant on the ground that the driver was an independent contractor and not the agent of the plaintiff. In overruling the demurrer the court said:

" 'That Redel was exercising an independent occupation as a repair man, and rendered the service of repairing the appellant's car in the course of such occupation, and under circumstances which made him an independent contractor as to that service, there seems to be no question, but it does not necessarily follow from this that he was an independent contractor as to the service he rendered in an attempt to deliver the car to the appellant after the repairs were made. The delivery of the car was no part or concomitant of his independent occupation as a repair man. Nor was it a necessary or usual incident to the work of repairing the car. It was not a part of his duties as a repair man, under his contract of employment to repair the car, unless made so by the express terms of the contract. In the absence of a contract *or custom,* the bailee of a car, for the purpose of making repairs upon it, is under no obligation to make delivery of the car to the owner, either at his place of business or his residence. Marron v. Bohannan, 104 Conn. 467, loc. cit. 470, 133 A. 667, 46 A.L.R. 838. *In the present case no custom of making such delivery was shown. So far as the evidence shows, Redel never delivered cars upon which he had made repairs to the owners at their homes or places of business,* or at any other place away from his repair shop, except that on a number of occasions he delivered the appellant's car to her at her home, and this was done as a mere accommodation or favor, and only as suited his convenience, and without any obligation to do so. If the driving of appellant's car by Redel in his attempt to deliver it at her home was done, upon completion of the repairs he was employed to make, as a mere accommodation or favor to her, and with her acquiescence and consent, and not in pursuance of an agreement with him to include this act of driving as a part of the general charge inclusive of the repairs to the car, then in so driving the car he was acting as a servant, and not as an independent contractor, and if he was acting as her servant in so driving her car to her home, and on arriving at her home found no one there to receive the car, he had implied authority to return the car to his shop, and, if he did so, without any request or direction from her to do so for the purpose of making further repairs upon it, he was, in so doing, still acting as her · servant.' " (Emphasis ours.)

Under Louisiana law, as reflected by these cases, where a custom is shown of making delivery of or sending for automobiles serviced or to be serviced by the garage, that custom becomes part of the service rendered by the garage and makes the garage owner an independent contractor with respect to the service, from the time he takes possession of the car until its actual return. This is in accordance with the general rule. See 5 Blashfield, Cyclopedia of Automobile Law and Practice, § 2966; and cases cited in annotations appearing in 46 A.L.R. 840.

It is without dispute that the Evangeline Auto Hotel, as a part of its business, customarily sent for cars to be serviced at its garage and delivered them after servicing; and that the garage's regular charges were sufficient to take care of this service as a part of its general overhead. These facts being established, it was error to overrule the motion by both defendants for a directed verdict and to overrule the subsequent motions for judgment notwithstanding the verdict.

Our consideration and disposal of the first ground makes it unnecessary to consider the second ground set out in the motion of the Standard Surety & Casualty Co., namely, that the policy issued by it did not cover the accident.

The judgment appealed from is reversed, and the cause is remanded with directions to enter a judgment for the defendants notwithstanding the verdict.

Reversed and remanded with directions.