## ARDITI v. BROOKS ERECTION CO.
### No. 43981.

Supreme Court of Missouri.
Division No. 1.
April 12, 1954.

---

3. 19 Am.Jur., Estates, § 34, p. 494; Restatement, Property, § 372, Comment b, p. 2169; 6 American Law of Property, § 24.62, p. 149.

4. As to whether Joseph Boes could and did devise the possibility of reverter, see: Section 463.130 RSMo 1949, V.A.M.S., authorizing the devise of "estates" and "interests" in lands; Annos. 77 A.L.R.

344, 16 A.L.R.2d 1246; 4 Baylor L.R. 246; 1950 Annual Survey of American Law, p. 637. As to the "exceptions" of the school tract from the conveyances by Boes' heirs and their grantees, see Smith v. School District No. 6 of Jefferson County, Mo.Sup., 250 S.W.2d 795; contrast Hamilton v. City of Jackson, 157 Miss. 284, 127 So. 302.

Hullverson & Richardson, St. Louis, for appellant.

Moser, Marsalek, Carpenter, Cleary & Carter, J. C. Jaeckel, St. Louis, for respondent.

HYDE, Presiding Judge.

Plaintiff had verdict for $10,000 damages for personal injuries, but the Court sustained defendant's motion for a new trial on the ground of error in giving instruction No. 1, and plaintiff has appealed.

Defendant says that instruction No. 1 was erroneous but also contends that it was entitled to a directed verdict and that the verdict was excessive. Plaintiff was a passenger on a motor bus going west on Lindell Boulevard which was struck by a truck driven south on Taylor Avenue by defendant's employee. The truck was owned by the Shell Oil Company, which was also a defendant. The issue of whether defendant or Shell was responsible for the truck driver's negligence was submitted to the jury which found in favor of Shell and against defendant. The claim of defendant, as to being entitled to a directed verdict, is that the evidence conclusively established the liability of Shell. On this issue, the evidence was that for several years defendant had done repair work on Shell equipment. The truck involved in the collision had been delivered to defendant that morning by a Shell driver, for repair of a leak in its tank. Shell drivers usually brought their equipment over for repairs but defendant would send its employees to the Shell garage to get vehicles when asked to do so. Often Shell would send its employees for its trucks after repairs had been made but, whenever Shell did not have a man available, defendant would have its employees return them. Shell never designated the route to be taken in delivering a truck. Whether defendant made delivery of any truck depended upon Shell's instructions and this was arranged either when Shell contacted defendant about making the repair or after defendant notified Shell that repairs had been completed. On the occasion involved herein, according to Shell's automotive inspector, at the time of arranging for the repair work, defendant was requested to deliver the truck to Shell when the repairs were completed. According to defendant's president, after the repairs were completed, he telephoned Shell's garage and was asked then to deliver the truck. He instructed defendant's employee Nelson, its shop foreman, to deliver the truck and had another employee, Pool, follow him in his automobile to bring him back to defendant's premises. Defendant was paid by Shell under a blanket order, made on a year to year

basis, providing rates for repair work and no extra charge was made for picking up or delivering Shell's equipment. Nelson and Pool were paid wages by defendant for the services they performed, including the time for making this delivery trip. The bill for the repair on this occasion was sent to and paid by another company which had overhauled the truck for Shell but which had not discovered the leak in the tank and which, for this reason, had authorized Shell to deliver the truck to defendant to make that repair.

Defendant's argument is that one who drives a vehicle as a mere accommodation or favor to the owner is a servant of the owner, citing Andres v. Cox, 223 Mo.App. 1139, 23 S.W.2d 1066. However, in that case, the decisive question on the liability of the owner of a car was whether a repair man in delivering it was an independent contractor or a servant of the owner. The Court did not hold he was a servant as a matter of law but said this was a jury question. Likewise we think it was at least a jury question here as to whether the driver Nelson was the servant of defendant or of Shell in making the delivery. Both parties agree that the applicable rule is stated in McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 70, 136 A.L.R. 516. In that case, we said: "The question of who is the master and therefore responsible, for the negligent act of the servant is said to be determinable by who at the time has the right to control the acts of the servant causing the injury. * * * To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person. * * * Clearly our decisions have made this right of control, or direction, of the physical activities in performing service, the essential test to determine * * * who is the master of a particular servant as to any questioned act". Certainly, the evidence in this case was sufficient to show and for the jury to find that defendant had the right of direction and control over Nelson, including the

right to determine how and when he should perform the task of delivering the truck, and had not surrendered such right, or any part of it, to Shell. We, therefore, hold this issue was properly submitted to the jury.

Instruction No. 1 was as follows: "The Court instructs the jury that if you find from the evidence that there was a stop sign at the northwest corner of Lindell and Taylor on the occasion mentioned in evidence, and *that it had been placed there under a duly enacted ordinance of the City of St. Louis then and there in full force and effect,* and that the Shell truck failed to stop before entering Lindell Boulevard as it proceeded southwardly on Taylor Avenue, and that it then and there collided with the Public Service Company bus, injuring plaintiff, if you so find, and

"If you further find that in failing to stop such truck under all of the circumstances then and there existing the driver of the truck failed to exercise the highest degree of care and was negligent, and that Mr. Arditi was injured as a direct result thereof, then you are instructed that the plaintiff is entitled to recover and your verdict should be in his favor and against either the Shell Oil Company or the Brooks Erection Company, as you may determine the issues with reference to those defendants under other instructions herewith submitted to you."

It was conceded that the truck did not stop before entering Lindell Boulevard. It was about 5:00 P.M. and traffic on Lindell was heavy. The driver testified that he intended to stop and said that he attempted to do so, by twice pushing on the brake pedal with his foot, the first time when the front of the truck was about 12 feet north of the north curb line and about even with the stop sign. The air brakes failed to function and he then tried to stop by use of hand brake levers but was unable to do so. He said the brakes worked properly when he stopped at Maryland Avenue, one block north, and that he drove between 8 and 12 miles per hour from Maryland to Lindell. He had also made

several stops, without any trouble, before reaching Maryland. It was shown that the brakes functioned properly upon inspection and tests after the collision. There was evidence that the air brake indicator showed zero after the collision and also that air pressure can be lost, by leaks in connections, water or dirt getting into the relay valves or by excessive application of the brakes. There were warning devices on the truck to show when the air pressure was low. It is clear that the issue of Nelson's negligence was one for the jury and defendant does not claim otherwise.

■ The claim of error in instruction No. 1 is that there was no evidence to support the submission of the above italicised portion thereof; that the reference to "the circumstances then and there existing" constituted a roving commission; and that it assumed the brakes were in good working order. It is conceded that there was a stop sign at the northwest corner of Lindell facing southbound traffic on Taylor. Plaintiff offered in evidence an ordinance of the City providing that "every vehicle * * * shall be brought to a full stop before entering or crossing any street lawfully designated as a boulevard." There was no proof of any other ordinance providing either that Lindell was designated as boulevard or that a stop sign should be placed at this intersection. (The Court's order was based on failure "to establish that Lindell Boulevard, at Taylor Avenue, was lawfully designated as a boulevard.") However, we think that is immaterial because the case was not submitted upon violation of the stop ordinance but upon common law negligence.

■ ■ It has been held that failure to stop at a stop sign, placed under statutory authority, is not negligence per se (as is the violation of an ordinance) so that, under the evidence herein, the question to be submitted was common-law negligence. See State v. Adams, 359 Mo. 845, 224 S.W. 2d 54. As stated, it is conceded that the stop sign was there, and no contention is made that it was unlawfully there, so it

was one of the circumstances properly to be considered in determining defendant's negligence. Witnesses testified without objection that this was "a major stop" and "a boulevard stop" for southbound traffic on Taylor. Even under defendant's evidence, it makes no difference whether or not Lindell had been designated a boulevard by an ordinance, or under what authority the stop sign was placed there, because its driver recognized that he had the duty to stop, at that time and place, before entering Lindell; and defendant concedes that he had such duty imposed by the circumstances. Nothing could be clearer than that he did have this duty to stop, at this time and place, recognized it and made an effort to do so; whether or not he exercised the highest degree of care to do so soon enough was the real jury issue on negligence under the evidence. Therefore, the question of whether the stop sign was placed there under the authority of an ordinance was not an essential element of plaintiff's case. It did not need to be in the instruction and was mere surplusage. Every finding in the instruction, including this one, was submitted in the conjunctive and it is well established that so submitting an immaterial matter is not prejudicial error, although, of course, it is not good practice and in some instances could make an instruction misleading. Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W.2d 69; Corley v. Kroger Grocery & Baking Co., 355 Mo. 4, 193 S.W.2d 897; Brinkley v. United Biscuit Co., 349 Mo. 1227, 164 S.W.2d 325; Scott v. Missouri Pac. R. Co., 333 Mo. 374, 62 S.W.2d 834. In this case, the trial court did not find the instruction to be misleading and our Rule 1.10 provides: "If the trial court grants a new trial without specifying discretionary grounds, it shall never be presumed that the new trial was granted on any discretionary grounds." 42 V.A.M.S. Furthermore, in this case defendant joined in this submission by requesting and obtaining instruction No. 6 telling the jury, as to the issue of negligence, they must find "said motor truck was caused to come into collision with a Public Service Company bus, as a direct result

of the negligence, if any, of said John Nelson, as set out in other instructions." Instruction No. 1 was the only instruction on negligence and defendant thus adopted its requirements so that it waived its right to complain about its submission of that issue. It is clear both from the submission and the entire record that both parties assumed the stop sign had been placed at the intersection by lawful authority and tried the case on that theory.

On its contention that this instruction gave the jury a roving commission, defendant cites Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541. The broad statements in the Yates case, which were misunderstood in their application beyond the circumstances of that case, have been modified by our recent decision en banc in Hooper v. Conrad, Mo.Sup., 260 S.W.2d 496. We hold there was no error in the use of the phrase "under all of the circumstances then and there existing," in instruction No. 1 herein, because there was no conflicting evidence in this case as to what these circumstances were. If defendant thought any more specific facts should be submitted, it should have requested an instruction which would do so. This is certainly true as to submitting a finding as to whether the brakes were in good operating condition and did not suddenly become inoperative, which defendant erroneously contends should have been included in this instruction. As to defendant's claim that this instruction assumed the brakes were in good working order, defendant does not point out how this is assumed and we hold that the instruction was not susceptible of any such construction. Our conclusion is that there was no error in giving instruction No. 1.

As to defendant's final contention that the verdict is excessive, the trial court did not so find and the effect of its order was to overrule this ground. Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 S.W.2d 610. We should, therefore, consider the evidence from the view most favorable to plaintiff and it is clear that, so considered, the verdict cannot be

held excessive. Plaintiff was a medical student at Washington University. His most serious injury was a fracture of the humerus of the right arm with displacement and fragmentation, some fragments protruding into the muscles. After his cast was removed, there was a deformity of the upper arm, with the upper part curving inward as compared to the lower part. At the time of the trial, plaintiff still had soreness in his upper arm and stiffness in his elbow with a shortening of the humerus of about half an inch. There was evidence of permanent impairment of flexion, extension and supination of the arm and hand. The jury could reasonably have found this injury would have some effect on his medical career and it had caused him to give up summer employment as a counselor and tutor at a boy's camp.

The order granting a new trial is reversed and the cause remanded with directions to reinstate the verdict.

All concur.