BERTHA G. IGO, RESPONDENT, v. WM. T. ALFORD, ADMR., ETC., APPELLANT.—69 S. W. (2d) 317.

Kansas City Court of Appeals. January 29, 1934.

*John C. Nipp, Chas. N. Sadler* and *E. E. Thompson* for respondent.

*Carl J. Marold* and *Shughart & Johnson* for appellant.

BLAND, J.—This is an action for damages for personal injuries. There was a verdict and judgment against the defendant in the sum of $1,000, and he has appealed.

Plaintiff was injured in a collision between the automobile in which she was riding, which at the time was being driven by her husband; and a car owned by one C. P. Jeserich. The collision occurred on September 25, 1929, a few miles north of North Kansas City, on Highway No. 71. After the suit was brought and, prior to its trial, defendant died and the cause was revived in the name of William T. Alford, administrator of his estate, as party defendant.

It is insisted by the defendant that his peremptory instruction should have been given. It is admitted that there was sufficient testimony for the consideration of the jury as to the negligence of the driver of deceased's car, but it is denied by the defendant that the driver thereof was acting as the agent of deceased.

The facts in this connection show that one Shepherd operated, in North Kansas City, what is known as the Shepherd Garage, consisting of an automobile sales agency and a public garage; that he had in his employ one Hartzell, who was foreman of the garage and service manager; that deceased was employed by the Yates Laundry Machinery Company which had entered into an agreement with Hartzell, as the agent of Shepherd, for the repair, in Shepherd's garage, of its automobiles and trucks being used in its business and of its employees; that after the automobile of an employee had been repaired the garage would send the bill therefor directly to the Yates Laundry Machinery Company; that this company would pay it and in turn charge the bill to the employee on whose car the work had been done.

The facts further show that deceased owned an automobile, which he used in the business of his employer; that the clutch of deceased's car had been giving him trouble by slipping; that in an effort to correct this defect he had taken it to two or three garages but they had failed to fix it properly; that it was deceased's intention to take a long trip, on business for his employer, and he desired to take his car to some competent repair shop for the purpose of having the trouble finally corrected; that he spoke to Mr. Yates, in charge of the Yates Laundry Machinery Company, with reference to the matter and Mr. Yates sent him to Shepherd's garage for the work to be done; that on the morning of the collision deceased took his car to that garage and related to Hartzell the trouble that he

had been having with the clutch slipping; that he told the latter to fix it and to make any other repairs on the car that were necessary and when he repaired the clutch "not to drive it around here so there won't anything·happen" but to take it out and "drive it over the hills" and "give it a good test." "I gave him orders."

The facts further show that Hartzell and one Eley, another mechanic in the garage, worked about an hour upon the clutch; that then, in response to the directions of deceased, Hartzell and Eley, the former driving, took the car out to test it on a hill where the collision occurred; that after leaving the car at the garage deceased went to Excelsion Springs on business for his employer; that when he came back in the afternoon of the same day he went to the garage to see about the car and found it wrecked and learned for the first time about the collision.

It is claimed by the defendant that the relationship between deceased and the proprietor of the garage was that of employer and independent contractor and, for that reason, deceased was not liable for the negligence of the driver of his car. It is claimed by plaintiff that the relationship was not that of independent contractor for the reason that deceased directed Hartzell to take the car and drive it on the hills after he had repaired it. There is no contention that had Hartzell repaired the car and tested it in the usual way without any directions as to how or in what manner it should be tested, deceased or his estate would not be liable.

It was stated in Mattocks v. Emerson Drug Co., 33 S. W. (2d) 142, 143:

"Where a mechanic or garageman has possession of the car for the purpose of repairing it, free from any direction or control on the part of the owner as to the means by which the final result is to be accomplished, such mechanic or garageman is an independent contractor, and the owner will not be held liable for injuries caused by the former's negligent operation of the car, as while testing it upon the highway, or while taking it to or from the garage."

A great number of cases are cited in support of this statement of the law. In addition, the following might also be cited in support of the statement therein made: 2 Blachfield Cyc. of Auto. Law, p. 1362; Berry on Automobiles (4 Ed.), p. 1248; Drollinger v. McCurdy, 238 N. Y. S. 219; Yearwood v. Peabody, 164 S. E. 901 (Ga.); Winerich Motor Sales Co. v. Ochoa (Tex.), 58 S. W. (2d) 193. In all of the cases cited there was no express direction from the owner of the car to the garageman or the mechanic as to how the car should be tested, the automobile being left for the purpose of repair and the garageman or the mechanic, in the exercise of his own judgment, had taken it out for the purpose of testing it or locating the trouble when the accident occurred.

However, there is at least one case involving an express direction on the part of the owner of the car as to how it should be tested after the repairs were made. In the case of Ousley v. Ledbetter (Ga.), 161 S. E. 634, the court said:

"Where the owner of an automobile truck, through his agent and driver, delivers it to a mechanic for the purpose of repair, and surrenders the entire control of it to him, the mechanic is not the servant of the owner but an independent contractor. Where the mechanic, under such circumstances, negligently injures another while testing the truck, the owner is not liable in an action for damages for the injury; and the fact that the test was being made with the consent *and by the direction of the agent of the owner* does not change the rule, it not appearing that the agent was riding in the truck or exercising any control over the mechanic's operation of it during the test." (Italics ours.)

In Thorn v. Clark, 177 N. Y. S. 201, the owner of an automobile left it with a repairman for repairs, the owner directing him "to take the car out," but whether for the purpose of testing it did not clearly appear. The court in that case said, l. c. 202:

"The fact that the owner, Clark, directed Laravie to 'take the car out' does not make Clark liable. Either Laravie took the automobile out to test it, or he was using it for his own purpose. In either event no liability rests on the owner."

"A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling." [Perry v. Fox, 156 N. Y. S. 373.]

Whether one is engaged in an independent calling depends upon the circumstances surrounding the employment. However, the question always to be determined is whether the right of control, with respect to the manner in which the details of the work are to be performed, lies with the contractor regardless as to whether that right has been exercised. Of course, if the control of the contractor is only as to the result to be obtained, the relationship is that of independent contractor. [39 C. J., pp. 1315 to 1321; Andres v. Cox, 23 S. W. (2d) 1066; Clayton v. Wells, 26 S. W. (2d) 969.]

We are of the opinion that the direction given by deceased to Hartzell to give the car a good test and to drive it over the hills for that purpose was merely a part of the contract or agreement between the parties, that is, to repair the car and to thoroughly test it in the manner designated, although there is no testimony of any special compensation being mentioned for thus testing the car. It was not only contemplated by the contract that the actual work of fixing the clutch be paid for, but also that of testing it in the manner agreed upon. There was nothing unusual about requiring

Hartzell to test the car, as that required, more or less, expert knowledge and training. Deceased did not control Hartzell or Eley in making the repairs or in testing the car. He was not present when the car was being tested and had no control over the manner of its operation. There was, therefore, no right of control in deceased as to the method, manner or details of the driving of the car. The agreement to give it a good test by driving it over the hills was nothing more than a requirement that in fixing the clutch it should meet a certain test, that is, that it work properly upon a hill, the evidence showing that such a driving of a car is perhaps the best means of testing a clutch. The car was to be tested in the manner agreed upon in order to prove that the work had been properly done, rather than in the execution of some independent mission of deceased, unconnected with the contract for repairs. In this connection the cases of Andres v. Cox, supra, Manhattan Fire & Marine Ins. Co. v. Grand Central Garage (Nev.), 9 Pac. 682, and like cases cited by plaintiff, are distinguishable.

However, plaintiff contends that on account of the fact that Shepherd was not present at the garage when deceased made the contract with Hartzell and had not been present before on that day and the further fact that the evidence shows, as is claimed by plaintiff, that if Hartzell had not been given directions to drive the car over the hills, he would not have done so because the ordinary test would not have included that kind of one, Hartzell was acting without the scope of his employment as the employee of Shepherd and instead of his being Shepherd's agent he was that of deceased's at the time of the collision.

We do not construe the testimony relied upon by plaintiff as bearing out her contention, that is, that the test being given the car at the time of the collision was an unusual test. This testimony given by the witness, Hartzell, is as follows:

"Q. Under ordinary circumstances you would not take an automobile several miles away from your garage, would you? Would you drive it around the block two or three times and test it and see if the clutch held or slipped? A. Just acting under his (deceased's) directions.

"Q. You took this car out on a hill one mile north of the north city limits of North Kansas City because Mr. Jeserich had so instructed you, didn't you? A. Yes, sir.

"Q. You would not have done it otherwise? A. Probably I would have.

"Q. Under ordinary conditions, would you? A. Yes.

"Q. How is that? A. Yes.

"Q. Were you expected to take an automobile several miles from

the garage for a test? A. That is not several miles, only about one mile, and a little over.

"Q. You did that only when you were so instructed, did you? A. Yes.

(Re-direct examination by Mr. Wilson.)

"Q. As a mechanic, probably it is the best means of testing a clutch by operating on a hill? A. It is."

We think there is but one construction to be given this testimony, and that is, that although the car was being driven on a hill where the collision occurred, that this was being done not solely because the witness had been instructed to so drive it by deceased, but that he probably would have so driven it anyway, as being the ordinary thing to do, as such was perhaps the best means of testing the clutch; that he would drive the car *several miles* under the conditions only when he was specially instructed to do so, but at the time in question he had driven it only a little over a mile. However, it is fair to say that there was other testimony that the collision occurred "about three or four miles, or such a matter, beyond North Kansas City." But regardless as to how the record may be construed in regard to this point, it will be remembered that Hartzell was not only the foreman and service manager of the garage but that he had been left in charge thereof by Shepherd on the day in question and had made a general contract on behalf of Shepherd with deceased's employer for the repair of all its automobiles and trucks and that of its employees. It certainly was not beyond the scope of Hartzell's employment to agree to test the car by driving it over the hills in the vicinity of North Kansas City (2 C. J., pp. 643, 644.) That was not such an extraordinary agreement as to remove him from the scope of his employment as the agent of Shepherd.

There is no evidence that Hartzell had no authority to make a contract of the kind in question. The evidence goes no further than possibly showing that it was not usual to drive a car so far away from the garage in order to test a clutch unless there was a direction on the part of the owner to do so. But even assuming that Hartzell was exceeding his authority, deceased had no knowledge of that fact and Shepherd, having left Hartzell in charge of the garage as manager, clothed the latter with apparent authority to make such an agreement and the situation is no different than had Shepherd clothed him with actual authority. [2 C. J., p. 644.]

We are not unmindful of the contention made by the plaintiff that, in considering a demurrer to the evidence, not only all of the evidence, but every reasonable inference that may be drawn therefrom, must be taken in its most favorable light to plaintiff and that where the jury might reasonably conclude from all the testimony

that the relationship of *respondeat superior* obtains rather than independent contractor, even though the evidence of that fact be slight, the judgment must be upheld, still upon the undisputed facts in this case, we are of the opinion that there is no room for saying that Shepherd, the owner of the garage, was acting as the agent or servant of the deceased at the time of the collision in question.

We have examined the cases cited by the plaintiff and find that they merely lay down general principles and rules that are invoked in deciding questions of this kind, but the facts in each of them are wholly unlike those in the case at bar.

From what we have said the judgment should be reversed and it is so ordered. All concur.