Jack BENTON, Plaintiff-Appellant,

v.

Ethel B. GRAHAM, Defendant-Respondent.

No. 7742.

Springfield Court of Appeals.

Missouri.

March 17, 1959.

Edward G. Farmer, Jr., Stewart E. Tatum, Joplin, for appellant.

A. L. Shortridge, Roy Coyne, Joplin, for respondent.

McDOWELL, Judge.

This appeal is from an order of the Circuit Court of Jasper County, Missouri, denying plaintiff's motion for a new trial.

The petition alleged, inter alia, that on December 30, 1953, plaintiff's 1951 Dodge sedan automobile collided with defendant's 1940 Plymouth car at the intersection of Murphy Avenue and 11th Street in Joplin; that the collision was directly and proximately caused by the negligence of defendant, resulting in injury to plaintiff's car in the sum of $693.55. Four grounds of primary negligence were alleged.

Defendant's second amended answer was a general denial and a plea of contributory negligence and counterclaim.

The counterclaim alleged, inter alia, that plaintiff's car was, at the time of the collision, being driven by Richard James Barnes, plaintiff's agent, acting in the scope of his employment, and that the collision was due to the negligence of said Barnes, (setting out four grounds of primary negligence) which directly contributed to or was the sole cause of the collision.

Briefly stated the evidence was that plaintiff, on December 29, 1953, took his Dodge automobile to Larue's Motor Shop for general repairs. At the time he discussed the repair job with Larue Tubbs, owner of the garage. Richard James Barnes was the automobile mechanic at the Larue Motor Shop working on commission. He was instructed by Tubbs to repair the Benton car, overhaul the engine, put in rings and pistons and do a valve job. At the completion of the repair work Barnes took plaintiff's car out for a check drive and, at the time of the collision in question, had finished the test drive and was returning the car to the garage.

Barnes testified that he was instructed by Tubbs to repair the Benton car; that he had never talked to plaintiff about the repair job before the car was brought into the garage. He gave this testimony:

"Q. Did you drive the car on December 30, 1953? A. Yes, sir.

"Q. What was the purpose of that trip? A. To check it to see if it was performing all right.

"Q. Is that usually a part of repairing a car? A. Yes, sir".

Witness testified that he was heading north on Murphy Avenue, a concrete street; that the day was clear and the street in good condition; that as he approached the intersection of Murphy and 11th Street he observed a Mercury car headed south on Murphy, backing north and west into 11th street. He stated:

"Q. Did you see the defendant's car then? A. No, sir.

"Q. When did you see the defendant's car? A. After it went around the Mercury and drove out in front of me.

"Q. Where was the front of your car when you first saw this defendant's car? A. About even with the curb line.

"Q. What curb line would that be? A. 11th.

"Q. Now where was her car when you first saw it? A. It was about the same."

He testified he applied his brakes and skidded about 20 feet; that the front end of his car struck defendant's car in the side about the front door; that defendant did not slow up or put on brakes that he could tell and no horn was sounded. He said his car was on the defendant's right side; that prior to the accident he looked both ways; that there was nothing to prevent him from seeing defendant unless it was the Mercury car backing into 11th Street or a house on the corner about 25 feet from the street; that he looked but did not see defendant's car; that as he approached the intersection he was traveling about 20 or 25 miles an hour and at that speed could have stopped his car within 25 feet; that he got his car slowed down before the collision. He stated:

"Q. Who asked you to make that road test? A. I believe it was my boss."

On cross examination he admitted that he had stated in a deposition that plaintiff had asked him to make the test. He testified that he made the test during regular hours of work; that he worked on a straight commission and tested all cars worked on. He gave this testimony:

"Q. Did that overhaul job include testing and inspecting and tightening the brakes on the car? A. Yes, sir."

Dan M. Sparrow testified that he saw the collision as he was approaching the intersection from the north, coming south on Murphy Street; that at the time of the collision he was about 300 or 400 feet from the intersection; that he saw the Mercury car back north on Murphy Street and west

into 11th Street; that the car was within 10 feet from the curb; that defendant swung to the north to pass the Mercury and then drove straight across the intersection; that she was driving slowly because 11th Street was a rough gravel road; that he would say she was going 10 or 15 miles per hour and he heard no horn. He stated he saw plaintiff's car coming north on Murphy and could see that an accident was going to happen; that plaintiff's car was about the same distance south of the intersection as his car was north. He stated that plaintiff was going 20, 25 or 30 miles per hour; that the accident occurred in the northeast corner of the intersection; that plaintiff's car struck defendant's car in the side near the front door. He said defendant's car might have been 100 or 50 feet from the intersection when he observed her passing the Mercury; that she was closer to the intersection than Barnes was. He gave this answer: "I believe Mrs. Graham's car,—was closer than Dick Barnes.

"Q. Her car drove into the intersection first? A. Yes.

"Q. Is there any traffic control there at that intersection? A. There is now; there wasn't then."

Ethel B. Graham, defendant, testified that she was driving east on 11th Street when the accident happened; that 11th Street runs east and west and intersects Murphy Avenue; that the accident happened about 11 o'clock a. m. in the intersection of the two streets. Witness said that the day was clear and there was nothing to interfere with vision at the intersection; that 11th Street was a rough gravel road. She gave this testimony:

"Q. Tell the jury at what speed you were driving after you passed over the railroad tracks and were going toward the intersection? A. I'd judge 10 to 15 miles an hour. I was driving slow because it was an awful rough street and I had just crossed the railroad track.

"Q. As you drove toward the intersection did you look toward your right or toward your left? A. I looked toward my right.

"Q. Did you see a vehicle that you later learned was Mr. Benton's car? A. Yes, sir.

"Q. Where was that car when you first saw it? A. About three-fourths of the way down the block.

"Q. Was that car going faster than you were or slower? A. Going faster I'm sure.

"Q. Did you slow down any before you entered the intersection? A. I'm sure I did.

"Q. About what speed did you enter the intersection? A. Probably between 5 and 10 miles an hour."

She testified that when she first saw the Benton car three-fourths of a block to the south, coming north toward the intersection, the front end of her car was getting up close to where there would be a curb on Murphy. She gave this testimony:

"Q. Then what did you do after you looked toward your right? A. I looked left."

She testified she observed a car coming from the north on Murphy Avenue some distance away; that this car was about the same distance to the north as the Benton car was to the south. She testified:

"Q. Then did you look either toward your right or left again as you drove into the intersection? A. I looked toward the right again and he was right on top of me. * * * I had crossed the center section of Murphy."

She testified that the Benton car was going faster than her car. She gave this answer: "I'd guess he was going twice as fast as I was going."

The jury returned a verdict for the defendant on plaintiff's petition and awarded defendant damages in the sum of $750 on her counterclaim.

The trial court sustained plaintiff's motion to set aside the verdict in favor of defendant on the counterclaim because the evidence was insufficient to support the judgment, and refused plaintiff a new trial.

There is but one assignment of error, to-wit: "The Trial Court erred in overruling plaintiff Benton's motion for a directed verdict at the close of all the evidence on defendant's counterclaim and in overruling plaintiff's motion for a new trial on his petition".

Appellant could not appeal from the action of the trial court in sustaining his motion to set aside the judgment on defendant's counterclaim. He was not aggrieved by a judgment in his favor. Section 512.-020 RSMo 1949, V.A.M.S.

The sole question presented to this court is the action of the trial court in refusing to award plaintiff a new trial on his petition.

Appellant complains of the action of the trial court in giving instructions numbered 4, 5, 7, 8, 9, 10, and 11 for respondent over the objections of appellant. He says that when the trial court sustained his after-trial motion for a directed verdict on plaintiff's counterclaim he admitted that he had submitted the cause on improper declarations of law along with the issues submitted in plaintiff's cause and that the submission of such instruction constitutes reversible error.

■ An examination of the instructions complained of shows that instruction No. 10 submitted defendant's theory of the case on his counterclaim. This instruction was not supported by substantial evidence. It was based upon the theory that the driver of plaintiff's car was at the time plaintiff's agent, acting in the scope of his employment. The only scintilla of evidence to support the question of agency was that the driver had admitted in a former deposi-

tion that plaintiff told him to test the car after the repair work had been completed and plaintiff's testimony that he did not remember of making any requests of the mechanic to test the car. The trial court's judgment in holding that the evidence was insufficient to support this instruction was clearly supported by Igo v. Alford, 228 Mo.App. 457, 69 S.W.2d 317.

Instructions numbered 4 and 5, given by the court in behalf of defendant, were based upon defendant's plea of contributory negligence. Instruction No. 4 reads:

"The Court instructs the jury that although you may find and believe from the evidence that defendant Ethel B. Graham was guilty of negligence as charged by plaintiff, yet if you further find and believe from the evidence that at the time and place described in the evidence that Richard James Barnes was driving plaintiff's automobile at plaintiff's request and upon plaintiff's business even though he, Barnes, was not paid therefor, and was so driving as an accommodation or favor to plaintiff, if so, and if you further find and believe that said Richard James Barnes while so acting for plaintiff, if he was so acting, was driving plaintiff's automobile north on Murphy Avenue and approached and entered the intersection of said Murphy Avenue and Eleventh Street of the City of Joplin, Missouri, at a rate of speed in excess of 10 miles per hour at a time when defendant's automobile was upon said intersection and there was danger of a collision therewith, or at a time when his, Barnes', view toward his left was obstructed by the Mercury automobile described in the evidence, or if you find and believe from the evidence that said Barnes while so acting for plaintiff, if he was so acting for plaintiff at plaintiff's request, drove toward and into said intersection on Murphy Avenue at a rate of speed in excess of 25 miles per hour and that said Murphy Avenue was not a through street, if so, then you are instructed that Barnes and plaintiff through him were guilty of negligence, and if you further find that

such negligence, if any, caused or contributed to cause the collision described in the evidence and plaintiff's damages, if any, then you are instructed that your verdict upon plaintiff's petition must be in favor of the defendant."

Instruction No. 5 reads: "The Court instructs the jury that although you may find and believe from the evidence that defendant was guilty of negligence as charged by the plaintiff, yet if you further find and believe from the evidence that Richard James Barnes was driving plaintiff's automobile at plaintiff's request and upon plaintiff's business even though he was not paid therefor and was so driving only as an accommodation or favor to plaintiff, if so, and if you further find and believe from the evidence that said Richard James Barnes while so acting for plaintiff negligently failed to keep a reasonable lookout ahead and toward his left as he drove toward and into the intersection described in the evidence, if so, and if you further find that such negligence, if any, directly caused or contributed to cause the collision described in the evidence and plaintiff's damages, if any, then you are instructed that plaintiff cannot recover in this case and your verdict upon plaintiff's petition must be in favor of defendant."

There was no evidence offered to justify the giving of these two instructions. The question of contributory negligence submitted was in itself a misdirection in that it conflicted with instruction No. 2 given on the part of plaintiff. The instruction reads:

"You are instructed that if you find from the court's instructions that the defendant was negligent and also find from the court's instructions and the evidence in the case that Richard Barnes, driver of the plaintiff's car, was negligent and further find from the evidence that such negligence directly joined and combined in causing the collision and damage to plaintiff, Jack Benton, and further find that Richard Barnes was operating plaintiff's

car on a roadtest after making repairs as an employee of the LaRue Motor Shop, then the negligence of Richard Barnes, if any, cannot be imputed to or charged against the plaintiff, Jack Benton, so as to defeat his claim, and you must find for the plaintiff, Jack Benton, on his claim for damages."

■ We recognize the rule of law that where the submission is not in itself a misdirection but is simply not supported by evidence or pleading and the whole instruction is not so confusing or misleading as to be prejudicial, the instruction is harmless error. Guiley v. Lowe, Mo.Sup., 314 S.W.2d 232. But we find that this instruction is actually in itself a misdirection and is confusing and misleading so as to be prejudicial. The reviewing court determines the legal sufficiency of an instruction by inquiring whether average laymen have been sufficiently appraised of necessary facts to be found by them and of correct legal conclusions which follow. Douglas v. Whitledge, Mo.App., 302 S.W.2d 294.

■ The facts set out in this instruction were not sufficient to justify a jury in finding agency so as to make the acts of the driver of plaintiff's car plaintiff's acts and certainly would be confusing to the jury when read in connection with instruction No. 2 given for plaintiff. It was stated in Happy v. Blanton, Mo.Sup., 303 S.W.2d 633 that the sufficiency of an instruction may be determined by whether the instruction resulted in a misdirection or whether the jury could have been confused by it.

Under the law as declared in Igo v. Alford, supra, the facts in instructions Nos. 4 and 5 were not sufficient to justify the jury in finding agency so the instruction was not only not supported by evidence but was a misdirection as to the law. The test of the correctness of an instruction is how the instruction will be naturally understood by the average men who compose a jury and if the instruction is of such a nature as to give the jury a roving commission and the resultant amount of damages allowed by the jury is clearly contrary to the evidence the verdict must be set aside. Salmon v. Brookshire, Mo.App., 301 S.W. 2d 48.

Under the evidence in the instant case the only defense defendant had was that she was not negligent. This defense was submitted in defendant's instructions numbered 7, 8, and 9, given by the court.

■ Because instructions numbered 4 and 5, given for defendant, are in conflict with plaintiff's instruction No. 2 and because such instructions could have been confused by the jury, we find that the trial court's judgment denying plaintiff a new trial on his cause of action should be reversed and a new trial ordered. Jones v. Hughey, Mo.Sup., 283 S.W.2d 550; Gaines v. Property Servicing Co., Mo.Sup., 276 S. W.2d 169.

Judgment reversed.

STONE, P. J., concurs in result.

RUARK, J., concurs.